**Shana DOMINGUEZ, Plaintiff,**

v.

**METROPOLITAN MIAMI–DADE COUNTY, Tracy Golub and Unknown Defendant, Defendants.**

**No. 03–22821 CIV.**

United States District Court, S.D. Florida.

Oct. 8, 2004.

Order Denying Reconsideration Nov. 16, 2004.

Second Order Denying Consideration Nov. 23, 2004.

---

**5.** *Id.*

**6.** *Id.*

Shana Dominguez, Coral Gables, FL, pro se.

Susan Torres, Dade County Attorney's Office, Joseph Stanley Shook, Miami, FL, for Defendants.

## OMNIBUS ORDER

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion to Compel Defendant to Answer Interrogatories, filed May 3, 2004, and Defendant Miami–Dade County's Objections to Order of Magistrate Judge Regarding Confidential Informant, filed August 4, 2004; Defendants' Motion for Summary Judgment, filed July 30, 2004, and Plaintiff's Motion to Extend Time Within Which to Answer Defendants' Motion for Summary Judgment as to Counts VI and VIII, filed August 20, 2004; Defendants' Motion In Limine to Exclude Evidence of Other Acts, filed July 30, 2004; Defendants' Motion to Exclude Plaintiff's Proposed Expert Witness, filed July 30, 2004; and Plaintiff's Unopposed Motion to Supplement Her Exhibit List with Exhibits One and Two of Defendants' Exhibit List/Withdrawal of Objections to Defendants' Exhibits One and Two, filed September 1, 2004.

## FACTS

**I. Facts relating to Plaintiff's stop by Miami–Dade County Police Department officers on *December 14, 2000***

In October 2000, the Miami–Dade County Police Department received a Crime Stoppers tip from an individual who stated that an illegal ketamine laboratory was operating at 22620 S.W. 134th Street in Miami–Dade County. Deposition of Roy Rutland, at 7–9; Deposition of Raul Martinez, at 5. This tip was received by Sergeant Raul Martinez of the Department's Narcotics Bureau and assigned to bureau detective Roy Rutland for investigation. Rutland Depo., at 7–9; Martinez Depo., at

5. Detective Rutland contacted a confidential informant ("CI") registered with the Narcotics Bureau from whom Detective Rutland had received reliable information in the past, and who was familiar with the area where the drug lab was supposed to be. Rutland Depo., at 11, 17. The CI confirmed that he or she knew Plaintiff Shana Dominguez, knew her to reside at 22620 S.W. 134th Street, and knew her to be a user and seller of cocaine.[1] Id. at 11–12; Deposition of Shana Dominguez, at 6. Based on the Crime Stoppers tip and this information from the CI, Detective Rutland instructed the CI to contact Plaintiff and arrange a drug purchase. Id. at 13–14. On or about October 20, 2000, the CI provided Detective Rutland with a quantity of cocaine which the CI explained had been purchased from Plaintiff at her residence. Id.

On December 14, 2000, Detective Rutland instructed the CI to call Plaintiff and arrange to purchase 3.5 grams of cocaine from her. Id. at 36. The CI then made a phone call in Detective Rutland's presence, although the detective did not record the phone number which the CI dialed and did not hear the voice of the person to whom the CI was speaking. Id. at 36–38. After this telephone conversation was finished, the CI informed Detective Rutland that Plaintiff had agreed to meet with the CI at a shopping center located at the corner of South Dixie Highway and southwest 184th Street at 11:00 p.m. that evening in order to sell 3.5 grams of cocaine to the CI. Id. at 36–38. Detective Rutland then informed the CI that Sergeant Martinez, the CI and the detective himself would monitor that location for Plaintiff's arrival. Id. at 40. At that time, the CI would be required to identify Plaintiff and contact her telephonically to cancel the transaction. Id. at 40. Detective Rutland's plan was to then conduct a traffic stop of Plaintiff, seize any illegal drugs and arrest Plaintiff for delivering narcotics. Id. at 40–41.

Detective Rutland, Sergeant Martinez and the CI arrived at the shopping center prior to 11:00 p.m. on the evening of December 14, 2000, with the detective and the CI riding together in the same car. Id. at 41–42. Detective Rutland observed an individual who the CI identified as Plaintiff arrive at the shopping center parking lot in a small truck. Id. Detective Rutland then observed the CI receive an incoming cellphone call; although the detective did not overhear the ensuing conversation, he was informed by the CI that the call had been from Plaintiff to advise the CI that Plaintiff had arrived at the designated parking lot and had in her possession the requested drugs. Id. at 42–45. Detective Rutland then instructed the CI to tell Plaintiff that the transaction was cancelled. The CI did so, and Plaintiff left the parking lot.[2] Id. at 54.

---

1. As will be explained below, this statement is consistent with the record before the Court even when all testimonial evidence is viewed in the light favoring Plaintiff. Plaintiff has testified that she "[has] never made arrangements to purchase drugs from any person on the face of this earth at any time, nor ... ever arrive[d] at any location on this earth at any time ... in order to deliver drugs to anyone." Affidavit of Shana Dominguez, at 1. The Court concedes this point, and accepts for purposes of summary judgment that Plaintiff has never used, bought or sold illegal drugs. This fact, however, does not logically refute Defendants' statement that a reliable informant told police that Plaintiff was a user and seller of illegal drugs.

2. The statements of fact contained in this paragraph are entirely consistent with Plaintiff's testimony. Plaintiff's Statement of Material Facts in Support of Her Opposition Motion [sic] to Defendants' Motion for Summary Judgment explains her presence at the shopping center as follows, with citations to Plaintiff's deposition testimony omitted:

On December 14, 2000, at about 11:00 pm. [sic] Shana wanted to go see what

Detective Rutland then instructed uniformed police officers to conduct a traffic stop of Plaintiff's vehicle and requested the presence of a canine unit, while Sergeant Martinez requested the presence of female officers. Rutland Depo., at 53–55; Martinez Depo., at 18. As Plaintiff was driving down South Dixie Highway, she was pulled over by Miami–Dade County Police Officers Anjima and Valle in a marked police car and stopped in a restaurant parking lot. Dominguez Depo., at 68–69. Officers Anjima and Valle were joined less than five minutes later by the canine unit of Officer Douglas and his dog Jenna. Rutland Depo., at 54–58. Detective Rutland and Sergeant Martinez also arrived on the scene, as did Officer Diana Fuentes and Defendant Officer Tracy Golub. Rutland Depo., at 56–62; Martinez Depo., at 26–28; Deposition of Tracy Golub, at 4–6.

After being stopped, Plaintiff was not immediately told the reason for the traffic stop and, after stepping outside her vehicle, watched as Jenna, under the command of Officer Douglas, entered and exited her truck three times and, in Plaintiff's words, "[j]ust sat on the seat." Dominguez Depo.,

at 72–74. Officer Douglas observed Jenna enter the vehicle and, after indicating the odor of narcotics coming from between the driver and passenger seats, sit inside the vehicle. Deposition of Abrom Douglas, at 13–14. After being informed of this positive reaction, either Sergeant Martinez or Detective Rutland ordered Officer Golub, a female, to conduct a search of Plaintiff's person. Golub Depo., at 11.

Officers Fuentes and Golub directed Plaintiff to an area in the parking lot behind a dumpster, from which Officers Valle, Anjima and Douglas, Detective Rutland and Sergeant Martinez could see Plaintiff's head but could not see her body. Dominguez Depo., at 92–95. Without explanation, Officer Golub donned rubber gloves and, in Plaintiff's words, began to pat down Plaintiff's body as follows:

> [Defendant Officer Golub] went underneath my clothes. And I didn't have a bra on. She felt my boobs and she felt my body. And she went underneath my shorts and pulled up my underwear, back and forth, back and forth so many times that, you know, she hurt my insides.

---

stores were open, it being Christmas time, so she took a drive to find out. When she arrived at plaza [sic] where Publix is, she went in and drove around the parking lot a couple of times and parked at the liquor store near Publix, in front of "Moon Buffet". She was also hungry and wanted to see if Moon Buffet was open. She also wanted to go to the ATM. However, she did not use the ATM because she felt uncomfortable; [sic] there being four cars parked in front of it and she saw no security. Shana got nervous and then left to go home. The Court accepts these statements as true for purposes of resolving Defendants' motion for summary judgment, even though this explanation for Plaintiff's presence at this location differs from the explanation proffered by Plaintiff in her briefing of Defendant's emergency motion for a stay of Magistrate Judge Brown's order compelling the production of the CI for discovery purposes. At that time,

Plaintiff explained that "she told two acquaintances ... earlier in the evening of December 14, 2000 that she may appear at the Oyster Bar[, located in the shopping center located at South Dixie Highway and southwest 184th Street,] for drinks later that night." Plaintiff's Answer to Defendant's Emergency Motion for Stay of Magistrate Judge's Order Regarding Confidential Informant, at 4. Because these explanations are not mutually exclusive and in order to favor Plaintiff's version of events, the Court accepts that Plaintiff may have had perfectly legal reasons for her presence at the shopping center at 11:00 p.m. on the evening of December 14, 2000. However, her motives, whatever they may have been, do not logically rebut the testimony of Detective Rutland and Sergeant Martinez that a reliable CI informed the Narcotics Bureau that Plaintiff would be at that location, at that time for the purpose of selling 3.5 grams of cocaine.

*Id.* at 95–96. As a result of pulling Plaintiff's underwear back and forth, Defendant Officer Golub's gloved hand made contact with Plaintiff's vagina. *Id.* at 101. Also, as a result of the force exerted by Defendant while pulling on Plaintiff's underwear, a part of Plaintiff's underwear was forced into Plaintiff's rectum.[3] Affidavit of Shana Dominguez in Support of Her Motion for Summary Judgment, at 1. Plaintiff, when asked to describe specifically the manner in which Defendant "violated" her body during the search, did not testify that Defendant herself conducted a visual or manual cavity search below Plaintiff's waist. Shana Depo., at 103. Although obliged to view the evidence in Plaintiff's favor, the undersigned finds no evidence in the record that Defendant conducted a cavity search, although it does appear that Plaintiff's underwear was forced into her body as the result of Defendant's external search for hidden drugs. After the pat-down search was completed, Plaintiff was instructed to remove her sanitary pad and rip it in half, which she did. *Id.* at 98. No further search was conducted of Plaintiff's person.

Plaintiff claims that other officers conducted a search of her vehicle which resulted in damage to the truck's sunroof handle, air-conditioning vents and speakers. *Id.* at 85. However, she never took the truck to be repaired after that night, never took the truck to have an estimate provided on the cost of repairing this damage, never attempted to replace the damaged items and did not suffer any monetary loss as a result of the alleged damage. *Id.* at 87–89. Plaintiff was then given Sergeant Martinez's business card and left the scene. *Id.* at 120–21.

Between December 14 and December 17, Plaintiff experienced discomfort and bleeding consistent with her period, but on December 18 experienced unusual pain and bleeding which she believed to be the result of an injury to her rectum suffered during the search. *Id.* at 106–10. On December 19, Plaintiff visited Dr. Marilyn Marcus. *Id.* at 110. Dr. Marcus observed that Plaintiff was not bleeding at that time and conducted a physical examination of Plaintiff which revealed no signs of trauma to Plaintiff's vagina or rectum. *Id.* at 113.

On September 22, 2003, Plaintiff filed an eight-count complaint in the Eleventh Judicial Circuit in and for Miami–Dade County Florida. This complaint claimed that Defendant Golub and an unknown defendant violated Plaintiff's rights under 42 U.S.C. § 1983 through the use of excessive force, that Defendant Miami–Dade County

**3.** Defendants argue that the Court should not credit Plaintiff's testimony on this point for several reasons. First, Defendants argue that Plaintiff's affidavit testimony contradicts her earlier deposition testimony and should be stricken as self-serving and conclusory pursuant to *Van T. Junkins & Assocs., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir.1984). However in that case, the Eleventh Circuit held only that, "[w]hen a party has given *clear answers to unambiguous questions* which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 657 (emphasis added). In this case, Plaintiff was not asked during her deposition whether her underwear

entered her rectum as a result of the force exerted by Defendant during the search and did not otherwise provide clear testimony on this issue. Plaintiff's affidavit testimony therefore complements, rather than contradicts, her deposition testimony and will be accepted by the Court as true for purposes of resolving Defendants' summary judgment motion. Defendants argue next that the Court should not credit Plaintiff's affidavit testimony because it is anatomically impossible for Plaintiff's underwear to enter her body in the manner described in Plaintiff's affidavit. This argument, however, asks the Court to decide a factual question and to weigh Plaintiff's credibility. The Court is obliged to view the record in Plaintiff's favor upon Defendants' motion and will credit her testimony.

and Defendant Golub committed the state-law tort of battery against Plaintiff, that Defendant Miami–Dade County, Defendant Golub and an unknown defendant committed the state-law tort of false imprisonment against Plaintiff, that Defendant Golub committed the state-law tort of intentional infliction of emotional distress and that Defendant Miami–Dade County was liable for its negligence in causing the destruction of Plaintiff's personal property during the December 14, 2000 traffic stop. This complaint was removed by Defendants to the United States District Court for the Southern District of Florida on October 21, 2003. On November 14, 2004, Defendants filed their answers and affirmative defenses to Plaintiff's complaint; at this time Defendant Officer Golub filed a counterclaim alleging that Plaintiff slandered Defendant through certain unspecified statements made by Plaintiff regarding Defendant's conduct on the evening of December 14, 2000.

## II. Facts relating to Plaintiff's request for the production of the CI during *pretrial discovery*

Plaintiff's counsel conducted the depositions of Detective Rutland and Sergeant Raul Martinez on February 17, 2004 and February 19, 2004, at which time Plaintiff's counsel inquired regarding the CI and the history, if any, of the relationship between the CI and the Miami–Dade County Police Department. Defendant's Emergency Motion for Stay of Magistrate Judge's Order Regarding Confidential Informant, at Exhibits A, B and E. Defendant objected to, and refused to answer, these questions on the basis of the confidential informant privilege. Defendant's Response to Plaintiff's Motion to Compel, at 3. On March 26, 2004, Plaintiff served Defendant with Plaintiff's second set of interrogatories, which included the following:

2. List the name and address of the confidential informant who was working with the officers the night of the seizure of Shana Dominguez on December 14, 2000 . . . .

A. Also, state whether or not the confidential informant ever proved [sic] reliable information to Metropolitan Miami Dade County Police in the past, and if so on how many occasions.

3. Describe the circumstances under which the confidential informant and Metropolitan Miami Dade County Police met and the date they met; specifically describing whether the initial meeting between the confidential informant and Metropolitan Dade County was the result of the arrest of the confidential informant.

Defendant's Emergency Motion for Stay of Magistrate Judge's Order Regarding Confidential Informant, at Exhibit D. In response, Defendant objected to, and refused to answer, these questions on the grounds that they sought information which was protected from disclosure under the confidential informant privilege. Defendant's Response to Plaintiff's Motion to Compel, at Exhibit E.

On May 3, 2004, Plaintiff filed a motion seeking to compel Defendant's response to the above interrogatories pursuant to Federal Rule of Civil Procedure 37 and Rule 26.1.H of the Local Rules of the United States District Court for the Southern District of Florida. This motion was referred to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A).[4] On June 17, 2004, the magistrate judge entered an order simultaneously denying Plaintiff's motion to compel the identity of the CI and schedul-

---

**4.** Section 636(b)(1)(A) provides in part that the undersigned "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."

ing a hearing for June 25, 2004 in order to decide whether an in camera hearing should be held to determine whether the fact of the CI's existence or identity is critical to Plaintiff's claims. Following this hearing, the magistrate judge entered an order on July 21, 2004 which concluded, in its entirety, "that the appropriate action is to hold an in camera hearing with the confidential informant being produced and questioned by the Court, as suggested in the case of *United States v. Kerris,* 748 F.2d 610 (11th Cir.1984)." In order to protect the anonymity of the CI, this order was not transmitted to Plaintiff's counsel and requested only the presence of Defendant's counsel and the CI at the in camera hearing.

On July 26, 2004, Miami–Dade County filed an emergency motion asking the Court to enter an order staying the in camera hearing pending Defendant's objection pursuant to Federal Rule of Civil Procedure 72(a) to the magistrate judge's July 21, 2004 order. On July 30, 2004, the Court entered an order granting Miami–Dade County's emergency motion. On August 4, 2004, Miami–Dade County filed objections to the magistrate judge's report, to which Plaintiff filed a response on August 12, 2004.

### LEGAL ANALYSIS

**I. *Plaintiff's motion to compel Defendants to answer interrogatories and Defendant's objections to the Magistrate Judge's order regarding the confidential informant***

Plaintiff's motion to compel argues that Detective Rutland and Sergeant Martinez fabricated the existence of the CI during their depositions or, alternatively, that the CI did not in fact provide the Miami–Dade Police Department with the information on which the officers allegedly relied in ordering the traffic stop and search of Plaintiff's person on December 14, 2000. Plaintiff's

motion asks the Court to question the CI in camera in order to verify the existence of the CI and evaluate the CI's testimony regarding his or her relationship with Plaintiff and the Miami–Dade Police Department. In response, Miami–Dade County asserts its "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), a privilege which applies with varying force in criminal prosecutions and civil actions, *In re 1638 E. 2nd Street,* 993 F.2d 773, 774–75 (10th Cir.1993). Plaintiff replies that identification of the CI or in camera questioning of the CI falls within an exception to this privilege: the information requested by Plaintiff's interrogatories is "essential to a fair determination of this cause." *Roviaro,* 353 U.S. at 61, 77 S.Ct. 623. More specifically, Plaintiff argues that she is entitled to know of, and presumably question, the CI because the CI is the source of "[all] facts relating to arguable probable cause." Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel Answers to Interrogatories/Disclose the Identity of the Confidential Informant, at 4.

The magistrate judge concluded that an in camera examination of the CI was warranted under these circumstances and ordered the CI and Defendants' counsel to appear for a hearing whose objective is not entirely clear from the magistrate judge's order. Presumably, this hearing would allow the magistrate judge to confirm the existence of the CI and to inquire regarding the CI's participation in the events preceding the traffic stop of Plaintiff on December 14, 2000. After considering Defendants' emergency motion to stay this hearing, the Court entered a stay because the record and the evidence produced by Plaintiff in support of her motion

to compel did not appear to the undersigned to satisfy the burden imposed by the Eleventh Circuit in *Kerris* on litigants, particularly civil litigants, to overcome the confidential informant privilege and obtain information allegedly essential to their claim.

Defendants' timely objected to the magistrate judge's order under Federal Rule of Civil Procedure 72(a) and the Court must consider whether, " 'on the entire evidence[, the undersigned] is left with the definite and firm conviction that a mistake has been committed.' " *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D.Colo.1996) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988)). For the following two reasons, the undersigned concludes that an in camera examination of the CI, as proposed by the magistrate judge's order, would be contrary to the case law in this circuit.

**A. *Plaintiff has failed to establish that an in camera examination of the CI is essential to determine whether probable cause existed for the traffic stop and search of Plaintiff's person***

■ In order to determine whether Defendant may withhold disclosure of the CI's identity, the Court is required to consider: (1) the extent of the informant's participation in the alleged criminal activity underlying Plaintiff's stop and search by police, (2) the directness of the relationship between the Plaintiff's claim and the probable testimony of the informant and (3) the government's interest in nondisclosure. *Cf. United States v. Tenorio–Angel*, 756 F.2d 1505, 1509 (11th Cir.1985) (relying on analogous criteria to determine whether the confidential informant privilege barred identification of an informant whose identity was sought by a criminal defendant as part of his defense); *see also Roviaro*, 353 U.S. at 62, 77 S.Ct. 623 (explaining that application of the confidential informant privilege hinges on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.").

■ Considering the first factor, the CI informed the police that he or she knew Plaintiff to reside at the address identified in the Crime Stoppers tip, knew Plaintiff to use and sell drugs, claimed to have purchased illegal drugs from Plaintiff at her residence and, in Detective Rutland's presence, to have called Plaintiff on two occasions in order to arrange and then cancel the purchase of 3.5 grams of cocaine. The CI, therefore, was more than a mere tipster. In addition to the information provided to the police, he or she engaged Plaintiff directly in the sale of illegal drugs while under the partial supervision of Detective Rutland. In *United States v. Gutierrez*, 931 F.2d 1482 (11th Cir.1991), the Eleventh Circuit, under similar circumstances, found that disclosure of the identity of a confidential informant was unwarranted. That case involved the criminal prosecution of a defendant who met with a confidential informant on several occasions in order to arrange the sale of 673 kilograms of cocaine. *Id.* at 1485–87. Undercover law enforcement officers were present during some, but not all, of these meetings. *Id.* At trial, the district court denied the defendant's motion to disclose the confidential informant's identity but ordered that the informant be produced to testify in open court. *Id.* at 1490. However, the prosecution was unable to locate the informant and he was not produced at trial. *Id.* The trial continued and the defendants were convicted despite never being able to examine the informant in open court. *Id.* On appeal, the Eleventh Circuit explained that the case involved substantial participation by

the confidential informant but was not one in which the government was required to disclose the informant's identity because the informant was accompanied at times by undercover officers who could corroborate the informant's version of events. *Id.* at 1491 ("[The informant] was always with at least one government agent who could testify to everything which occurred except for a few instances in which [the informant] spoke with the appellants while no government agent was present; consequently, [the informant's] involvement in the criminal activity alone does not mandate disclosure."). Applying that holding to this case, the fact that the CI claimed to have purchased cocaine from Plaintiff while alone with her is insufficient to require the disclosure of the CI's identity because, as in *Gutierrez,* law enforcement officials are able to testify regarding their own observations while supervising the CI's interaction with Plaintiff.

The Court considers next the directness of the relationship between the Plaintiff's claim and the probable testimony of the informant. *Gutierrez* explains that, under this factor, Plaintiff bears the burden to " 'show that the informant's testimony would significantly aid in establishing an asserted defense.' " *Id.* (quoting *Tenorio–Angel,* 756 F.2d at 1511). Plaintiff states flatly that she has never sold drugs-nor, in fact, has she ever "made arrangements to purchase drugs from any person on the face of this earth"-and asserts repeatedly and without elaboration or reference to the record that Detective Rutland and Sergeant Martinez fabricated the CI in order to justify their actions post hoc. Therefore, according to Plaintiff, the Detectives lacked arguable probable cause. At bottom, Plaintiff's argument seems to be that it is fair to assume that the officers fabricated the existence of the CI unless the CI is produced for an in camera examination. Such arguments, however, have already been squarely and summarily rejected by the Eleventh Circuit Court of Appeals in *Gutierrez* and other cases and other circuit courts of appeals. *Id.* ("Mere conjecture about the possible relevance of [the confidential informant's] testimony is insufficient to compel disclosure." (citing *Kerris,* 748 F.2d at 614)); *see also Kingsland v. City of Miami,* 369 F.3d 1210, 1216 n. 8 (11th Cir.2004) ("[W]e are mindful that a court need not entertain conclusory and unsubstantiated allegations of fabrication of evidence."); *Cunningham v. Gates,* 229 F.3d 1271, 1291–92 (9th Cir.2000) (dismissing plaintiffs' conclusory allegations of fabrication where the plaintiffs produced "not an iota of evidence" to suggest that the defendant officers fabricated evidence). By comparison, in *Kingsland,* the plaintiff was able to discredit the direct testimony of defendant police officers by first pointing out the complete absence of crime-scene evidence which corroborated the officers' versions of events and then introducing circumstantial evidence which corroborated the plaintiff's own testimony. *Kingsland,* 369 F.3d at 1213–17.

Plaintiff's only effort to prove that Detective Rutland and Sergeant Martinez fabricated the existence of the CI consists of her unsupported speculation to that effect. Plaintiff has not pointed to any inconsistencies between the officers' testimony and the other evidence in the record and has not produced the testimony of other witnesses who might have corroborated Plaintiff's claims. Instead, the undisputed record establishes that a reliable CI provided the Narcotics Bureau with information which was consistent with the information contained in the Crime Stoppers tip; that police laboratory tests confirmed that the substance allegedly purchased from Plaintiff by the CI on October 20, 2000 was cocaine; that Detective Rutland personally observed the CI contact an individual alleged to be Plaintiff in order to arrange a meeting in the shopping center parking

lot; that the CI positively identified Plaintiff upon her arrival at that location; and that the detective personally observed Plaintiff leave that location after observing the CI call to cancel the drug buy. In the face of this uncontroverted evidence, Plaintiff's conclusory assertions are insufficient to satisfy her burden because Plaintiff has not shown that information produced by an in camera examination of the CI would significantly aid in establishing her asserted defense of lack of probable cause for the traffic stop and search.

The third factor requires the Court to consider the government's interest in this litigation, described by the Supreme Court as "the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro*, 353 U.S. at 59, 77 S.Ct. 623. The Fifth Circuit explained more specifically that, in dealing with confidential informants providing information regarding illegal drug activity, municipal governments' interest " 'relates to both the safety of the informant and the informant's future usefulness to the authorities as a continuing confidential source.' " *In re Kleberg County*, 86 Fed. Appx. 29, 33 (5th Cir.2004) (quoting *United States v. Orozco*, 982 F.2d 152, 156 (5th Cir.1993)). The Court concludes that the magistrate judge's order puts the CI at risk in a way described by *Kleberg* even though Defendants have not introduced evidence of actual threats to the CI's safety should he or she be produced for in camera examination. However, "[r]equiring an informant to appear at a particular time at a particular place is tantamount to revealing that informant's identity. A confidential informant often has had direct personal contact with the person she reported (or is still reporting) to the authorities and

is thus recognizable by sight to that person." *Id.* at 33. The Defendants' interest in protecting the safety and usefulness of the CI militate against this risk, particularly as Plaintiff has not shown that an in camera examination would even produce information helpful to her case.

For these reasons, the Court finds that all three *Tenorio–Angel* factors weigh against disclosure of the CI's identity or production of the CI for an in camera examination. For this reason, the Court shall sustain Defendants' objections to the magistrate judge's report and shall deny Plaintiff's motion to compel.

**B.** *The record already before the Court is sufficient to determine that neither disclosure of the CI's identity nor an in camera examination of the CI is required*

Regarding the propriety of an in camera hearing to determine whether the privilege should apply, the Eleventh Circuit has explained that such a hearing

> is one way to aid the trial court in its application of the *Roviaro* test. This method has been employed in numerous circumstances. Such an *in camera* hearing, however, is not always required, but depends upon whether the trial court has the information necessary to determine if disclosure of the informant's identity is required without holding an *in camera* hearing.

*Tenorio–Angel*, 756 F.2d at 1509 n. 7. As explained above, the record contains the information necessary for the undersigned to determine that disclosure is not required without the need to conduct an in camera hearing. Accordingly, the magistrate judge's order is reversed pursuant to Rule 72(a) and Plaintiff's Motion to Compel Defendant to Answer Interrogatories by Disclosing the Identity of the Confidential Informant/Motion for In Camera Hearing is denied.

## II. *Plaintiff's motion to extend time within which to answer Defendants' motion for summary judgment*

Plaintiff's motion to extend time argues that Plaintiff should be afforded an additional opportunity to respond to Defendants' motion for summary judgment on Plaintiff's false imprisonment and negligence claims against Miami–Dade County because Plaintiff's response to Defendants' arguments is contingent on the Court's disposition of Plaintiff's request for an in camera examination of the CI. Plaintiff asserts that, if such an examination were allowed to proceed, she would be able to prove that "[Detective Rutland's and Sergeant Martinez's] entire basis for probable cause, information allegedly provided to the C.I., never occurred and is a fabrication intended to protect [them] from allegations of an illegal stop and seizure."

This motion simply repeats those unavailing arguments already made in support of Plaintiff's motion to produce the CI and shall be denied. The Court has already found that, under *Kingsland*'s clear mandate, the Court is not obliged to entertain conclusory assertions of fabrication of evidence by law enforcement officials where these assertions are not supported by direct or circumstantial evidence of any kind. Furthermore, Plaintiff's assertion that these officers lied under oath regarding their interaction with the CI is not supported in any way by any evidence in the record to discredit their testimony. More importantly, Plaintiff's position is simply illogical-the fact that Plaintiff, as she asserts, has never used, purchased or sold drugs does not establish that Detective Rutland or Sergeant Martinez were not told otherwise by a reliable CI.

Plaintiff states that, in the event that no in camera examination of the CI takes place, she "will necessarily need to concede Counts VI and VIII[, because there] will be no evidence from which to establish a lack of probable cause." Plaintiff's Motion to Extend Time Within Which to Answer Defendants' Motion for Summary Judgment as to Counts VI and VII, at 2. However, as explained below, these counts will be remanded to the state court for disposition. At that time, it is possible that this Court's determination that probable cause existed for the traffic stop and search will assist the state court in concluding that these claims are barred as a matter of law. The Court does not now decide this question and does not take advantage of the concession offered by Plaintiff's counsel.

Finally, the Court notes that Plaintiff has already used the maximum number of pages allowed by Rule 7.2.C of the Local Rules of the United States District Court for the Southern District of Florida in responding to Defendants' motion for summary judgment. Therefore Plaintiff, in any event, is foreclosed from further briefing on Defendants' motion by the local rules.

## III. *Defendants' motion for summary judgment*

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing summary judgment.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving

party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[5] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party

must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

**A. *Plaintiff's § 1983 claim against Defendant Golub***

 Defendant Golub argues that she is entitled to qualified immunity from Plaintiff's excessive force claim under § 1983.[6] For the following reasons, the Court agrees and holds that Defendant is entitled to summary judgment because it would not have been clear to a reasonable officer in Defendant's position that her conduct was unlawful in the situation with which she was confronted on December 14, 2000. Alternatively, even if Defendant is not entitled to qualified immunity, Defendant's search of Plaintiff's person conformed with Plaintiff's rights under the Fourth Amendment and Defendant is entitled to summary judgment for that reason.

1. The traffic stop and subsequent search of Plaintiff's person were supported by probable cause to believe that Plaintiff possessed a small quantity of cocaine and were justified by the automobile and exigent circumstances objections to the *Fourth Amendment's warrant requirement*

Defendants' summary judgment motion argues that Defendant Golub is entitled to

**5.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

**6.** Plaintiff states in her response in opposition to Defendants' motion that her § 1983 claim alleges only the unconstitutional use of excessive force. Plaintiff's Answer to Defendant's Motion for Summary Judgment, at 1.

qualified immunity from Plaintiff's claim that Defendant's search violated her Fourth Amendment right to be free from the use of excessive force by law enforcement personnel. As explained in Parts III.A.2 and III.A.3 below, the Court finds that Defendant enjoys qualified immunity and, alternatively, that Defendant's actions were consistent with Plaintiff's Fourth Amendment rights. The Court reached these conclusions by applying case law which explains that the amount of force which may constitutionally be used by a law enforcement officer during searches and seizures depends on the level of suspicion of criminal activity that is objectively reasonable under the circumstances. Therefore, in order to determine what force Defendant was entitled to use on the night of December 14, 2000, the Court must first determine whether an objective officer in Defendant's position would have had reasonable suspicion, probable cause or some greater or lesser degree of suspicion to believe that Plaintiff possessed illegal drugs at that time. For the following reasons, the Court concludes that the decisions to conduct a traffic stop of Plaintiff's vehicle and then search the vehicle and pat-down Plaintiff arguably were supported by probable cause that Plaintiff possessed a small quantity of cocaine.[7]

In *Kingsland*, 369 F.3d at 1216, the Eleventh Circuit, quoting *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir.1998) (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir.1995)), explained that

"[p]robable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. This standard is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." ' "

The undisputed facts establishing probable cause prior to Defendant's search of Plaintiff's person consist of the following: (1) Plaintiff, as she concedes, lived at an address at which an anonymous Crime Stoppers tip advised that an illegal drug laboratory was operating, (2) a reliable CI registered with the Narcotics Bureau informed police that Plaintiff was a user and seller of illegal drugs; (3) the CI produced cocaine which was allegedly purchased from Plaintiff, (4) the CI, while under the supervision of Detective Rutland, arranged a meeting in a shopping center parking lot to buy 3.5 grams of cocaine with an individual he claimed to be Plaintiff, (5) Plaintiff arrived at the parking lot at the appointed time and was positively identified by the CI in Detective Rutland's presence; (6) Plaintiff left that location after the detective observed the CI make a phone call cancelling the drug purchase; and (7) the canine unit called to the scene of Plaintiff's traffic stop responded positively to

---

**7.** The Court emphasizes that she credits for purposes of the pending motion Plaintiff's testimony that Plaintiff has never used, bought or sold illegal drugs. Plaintiff, however, has no personal knowledge of Detective Rutland's past experience with the CI or the conversations which occurred between the detective and the CI. Additionally, Plaintiff was not present while the CI made phone calls under Detective Rutland's supervision and was not present in the detective's car on the evening of December 14, 2000 when the CI positively identified Plaintiff as the person with whom the CI had arranged to purchase drugs. Plaintiff fails to appreciate that her guilt or innocence of the underlying criminal activity of possessing cocaine is irrelevant to the question of probable cause. Even accepting as true Plaintiff's testimony that she did not possess cocaine on December 14, 2000, the facts established by the record and laid out in the Court's opinion constituted probable cause for the decision to stop and search Plaintiff.

the presence of narcotics in Plaintiff's vehicle.

In opposing Defendants' motion for summary judgment, Plaintiff has not explained why a prudent person, after considering these facts, would not believe that Plaintiff was in possession of cocaine. Rather, Plaintiff attempts to dispute the above facts by consistently taking the position that the facts "attested to by officer Rutland (which relate to probable cause to arrest and/or search) never in fact occurred. These facts are merely an after the fact fabrication used to justify the stop of [Plaintiff.]" Plaintiff's Answer to Defendants' Objections to Order of Magistrate Judge Regarding Confidential Informant, at 4. *Kingsland,* however, explains clearly that a court need not entertain conclusory and unsubstantiated allegations of fabrication of evidence and the Court rejects Plaintiff's suggestion that the officers whose deposition testimony has been introduced into the record have lied regarding the facts on which they relied in stopping and searching Plaintiff.

Upon Defendants' motion for summary judgment, the Court is therefore not obliged to credit Plaintiff's assertion that the facts recited above never occurred and rejects Plaintiff's conclusory and unsubstantiated accusations that Detective Rutland and Sergeant Martinez fabricated the CI during their deposition testimony. Instead, the Court accepts the above facts as undisputed by the record and concludes that a reasonable person in Defendant's position would believe that Plaintiff was in possession of some cocaine at the time she was stopped and subsequently searched.

The Court also finds based on the undisputed facts that the decision to conduct a warrantless pat-down search of Plaintiff's person was justified given the canine unit's detection of the odor of narcotics in Plaintiff's vehicle by the automobile and exigent circumstances exceptions to the Fourth Amendment's warrant requirement. *Cf. United States v. Mikell,* 102 F.3d 470, 475 (11th Cir.1996) ("This court has held that the need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be quickly destroyed." (quotation omitted)). Because the officers believed that Plaintiff possessed a small quantity of cocaine on her person or hidden in her vehicle, a reasonable and experienced police officer would believe that Plaintiff was capable of destroying any drugs she may have been carrying before a warrant could be secured, justifying a warrantless search of Plaintiff's person under the standard announced in *Mikell* and *United States v. Young,* 909 F.2d 442, 446 (11th Cir.1990).

**2.** ***Defendant is entitled to qualified immunity because no materially similar case had been decided by the time of the search establishing that Defendant's actions were unlawful***

The Court now considers whether Defendant is entitled to qualified immunity from suit. The Supreme Court explained in *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), that "[w]here ... the excessive force claim arises [as a claim under § 1983] in the context of an ... investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *See also Kesinger v. Herrington,* 381 F.3d 1243, 2004 WL 1902727 *4 (11th Cir. Aug.26, 2004) ("The Fourth Amendment's freedom from unreasonable searches and seizures also encompasses the right to be free from the use of excessive force in the course of an investigatory stop."). In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the United States Supreme Court considered a defendant officer's assertion of qualified immunity from suit for the

alleged use of excessive force in violation of the plaintiff's Fourth Amendment rights and identified the analytical sequence in which such claims and defenses should be considered.[8] Upon Defendant's assertion of qualified immunity, the Court must consider this defense before inquiring into possible violations of § 1983 through Defendant's use of excessive force because, as the Court explained, the privilege is " 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " *Id.* at 200–01, 121 S.Ct. 2151 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). To determine whether Defendant is entitled to assert qualified immunity from suit for her search of Plaintiff's person on the evening of December 14, 2000, the court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151 (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Applying this question to the rights protected by the Fourth Amendment, *Saucier* explains that, despite

> the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness[,] "the right the official is alleged to have violated must have been 'clearly established' in a more particularized ... sense: The contours of the right must be sufficiently clear that a reasonable official would understand

that what he is doing violates that right." The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 201–02, 121 S.Ct. 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Simply, the Supreme Court explained that, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202, 121 S.Ct. 2151.

The Eleventh Circuit, in several cases decided following *Saucier,* has further developed the sequence and the criteria established by the Supreme Court. First, the circuit court explained in *Kesinger,* 381 F.3d 1243, 1249, that the threshold question of whether a constitutional violation has occurred is to be decided through the following burden-shifting analysis: the public actor must prove that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred; if this burden is satisfied, the individual bringing suit must establish that the public actor has violated a clearly established constitutional right. The individual bringing the action may accomplish this in two ways:

> A party may show that the law was clearly established, first by pointing to a materially similar case that has already decided that what the police officer was doing was unlawful. A party may also

---

8. In adopting this standard, the Supreme Court specifically rejected the approach used below by the court of appeals in *Katz v. United States,* 194 F.3d 962, 970–71 (9th Cir. 1999), in which the Ninth Circuit held that "reasonableness inquiry as to whether a defendant is entitled to the defense of qualified immunity in a claim of excessive force under the Fourth Amendment is the same as the reasonableness inquiry on the merits of such a claim." The Supreme Court responded that "the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest." *Saucier,* 533 U.S. at 197, 121 S.Ct. 2151.

demonstrate the existence of clearly established law when the words of the pertinent federal statute or federal constitutional provision are specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the *total absence of case law.* *Durruthy v. Pastor,* 351 F.3d 1080, 1092 (11th Cir.2003) (quotations omitted). *See also Kesinger,* 381 F.3d 1243, 1249 (holding that clearly established Fourth Amendment law consists of "case law involving materially similar facts that would give a reasonable police officer fair and clear warning" that the force used in a particular situation would violate the Constitution (citing *Garrett v. Athens–Clarke County Ga.,* 378 F.3d 1274 (11th Cir. 2004))). Here, Plaintiff has not argued that a particular federal statute or constitutional provision made clear that Defendant's actions were unlawful and the Court shall focus exclusively on the clearly established case law at the time of the search.

In sum, the Court is obliged to consider whether Defendant enjoys qualified immunity from suit in this case before deciding whether the force allegedly used was unconstitutionally excessive. To do so, the Court must first consider whether Defendant was acting within the scope of her discretionary authority while searching Plaintiff on December 14, 2004. Neither party disputes this point, and the Court finds that Defendant was acting within the scope of her duties and authority as a police officer while searching Plaintiff's

person. Therefore, Defendant is entitled to qualified immunity unless Plaintiff can demonstrate that, at the time of the search, a materially similar case had already decided that what Defendant was doing was unlawful. Comparing Plaintiff's description of the search to those cases on which both parties have relied in briefing Defendants' motion for summary judgment, the undersigned finds that Defendant is entitled to qualified immunity.

First, the Court will describe the search of Plaintiff's person relying entirely on Plaintiff's own testimony.[9] Before being searched, Plaintiff was taken by Defendant and Defendant's female partner to a location from which her head but not her body could be seen by the male officers who participated in her traffic stop and searched her car. Once alone with the two officers, Plaintiff was not advised of the purpose or object of the search before it began. The search was conducted entirely by Defendant Golub, who donned latex gloves before touching Plaintiff. Plaintiff was not asked to remove her clothing, nor was her clothing removed by Defendant during the course of the search. Rather, Defendant used her hands to feel underneath Plaintiff's shirt; because Plaintiff was not wearing a bra, this resulted in Defendant's gloved hands touching Plaintiff's breasts. Defendant felt underneath Plaintiff's shorts and pulled back and forth on Plaintiff's underwear several times. In the process of doing so, Defendant's gloved hand brushed the exterior of Plaintiff's vagina and rectum. This pulling resulted

---

9. Plaintiff's response in opposition to Defendants' motion for summary judgment employs inflammatory language that is inconsistent with Plaintiff's own testimony. Putting aside Plaintiff's ill-advised references to Defendant's "sadistic manner" and "irrational need to control and dominate through humiliation and brutality," Plaintiff refers to the "invasion" or "violation" of her person seventeen times during her brief by the undersigned's

count, and uses the adjective "brutal" throughout. Defendant's search was invasive only to the extent that a piece of Plaintiff's underwear entered Plaintiff's rectum; Defendant herself did not manually or visually search Plaintiff's vagina or rectum. Furthermore, Defendant's external contact with Plaintiff's genitals or rectum was the incidental result of Defendant's jostling Plaintiff's underwear.

in a portion of Plaintiff's underwear entering Plaintiff's rectum and caused Plaintiff to experience discomfort. Defendant did not conduct a manual or visual cavity search below Plaintiff's waist. After completing this search of Plaintiff's person, Defendant requested that Plaintiff herself remove the sanitary pad she was wearing, which Plaintiff did, and instructed Plaintiff to rip this pad in half, which Plaintiff did.[10] At this point, Defendant had failed to discover any illegal drugs on Plaintiff's person and ended the search.

Defendant explains that these search techniques were required to determine that Plaintiff was not concealing illegal drugs on her person and were based on Defendant's professional experience with the locations on the body in which individuals may conceal drugs. Defendant searched underneath Plaintiff's clothing and moved Plaintiff's underwear in order to determine whether Plaintiff was hiding under her breasts or in her crotch the small quantity of cocaine Defendant believed to be in Plaintiff's possession.

Rather than present cases which might have made clear that Defendant's actions were unlawful, Plaintiff's response in opposition to Defendants' summary judgment motion merely attempts to distinguish those cases on which Defendants have relied, namely *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. Mar.28, 2000), *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir.1997), and *Burns v. Loranger*, 907 F.2d 233 (1st Cir. 1990).[11] These cases are either materially distinguishable from the present case or support the conclusion that Defendant is entitled to qualified immunity.

*Jones* did not involve a search underneath an arrestee's or detainee's genitals or underneath their clothing. In *Jones*, the Eleventh Circuit considered the plaintiff's § 1983 claim against officers who slammed the plaintiff against a wall, kicked his legs apart, required the plaintiff to raise his arms above his head and pulled his wallet from his pants. *Jones*, 121 F.3d at 1460. The court concluded that these officers were entitled to qualified immunity from suit because, "[w]hile the use of force against [the plaintiff] may have been unnecessary, the actual force used and the injury inflicted were both minor in nature." *Id. Cf. Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir.1993) (finding defendant officer entitled to qualified immunity where the plaintiff was placed in a choke-hold and pushed into a wall because such force was not plainly unlawful).

In *Burns*, the First Circuit considered a plaintiff's § 1983 suit against a female officer who conducted a warrantless strip search of the plaintiff in the privacy of a bathroom after the plaintiff was observed entering a home at which drug sales were known to occur and the plaintiff was seen in the company of two men who exchanged a small bag which appeared to contain drugs. *Burns*, 907 F.2d at 234–35. The defendant conducted a visual search of the plaintiff's body but, with the exception of physically searching the plaintiff's hair, did not touch the plaintiff and no visual body cavity search was performed. *Id.* at 235. The court did not consider defendant's qualified immunity from suit. Instead, af-

---

**10.** Defendant has justified these instructions by explaining that, in her professional experience, women who transport narcotics often try to hide them between their body and sanitary pads.

**11.** The parties also dispute the applicability of the holding in *DeFelice v. Ingrassia*, 210

F.Supp.2d 88 (D.Conn.2002). This case, however, was decided after the search occurred on December 14, 2000 and its holding is irrelevant to the question of whether case law existing on that date would have put Defendant on notice that her actions were unlawful.

ter finding probable cause that the plaintiff was in possession of illegal drugs at the time she was searched, the court concluded that the defendant officer's actions did not constitute excessive force because "[i]t is common knowledge that controlled substances often are concealed on the person of users and dealers alike." *Id.* at 238–39.

Finally, in *Nolin* the Eleventh Circuit considered whether the plaintiff's Fourth Amendment rights were violated where, after lawfully arresting the plaintiff, the defendant officer grabbed plaintiff, shoved him against a vehicle, pushed the plaintiff's knee into his back and the plaintiff's head against the vehicle, placed the plaintiff in handcuffs and, of particular relevance to this case, searched the plaintiff's groin in an uncomfortable manner prior to putting the handcuffs on. *Nolin,* 207 F.3d at 1258 n. 4. The Eleventh Circuit found that this amount of force was so de minimis that the defendant officer was entitled to qualified immunity from the plaintiff's excessive force claim. *Id.* at 1258.

*Burns* and *Nolin,* taken together, establish two boundaries which bracket this case squarely and make clear that Defendant is entitled to qualified immunity. First, they establish that, prior to arrest, a female detainee may be visually strip searched by a female officer in a private location if the officer possesses probable cause to believe that the detainee possesses illegal drugs. Secondly, they establish that an arrestee's groin area may be searched, even in a painful manner, and the arrestee forcefully subdued and handcuffed consistent with the Fourth Amendment if this arrest and search are supported by probable cause. In this case, Plaintiff was taken to a private location by a female officer who did not strip search Plaintiff but rather searched underneath her clothing. Plaintiff did not conduct a body cavity search, but used such force while searching Plaintiff's crotch that it caused discomfort to Plaintiff's vagina and rectum. Defendant's search is therefore less humiliating than the search which was found to be constitutional in *Burns,* because Plaintiff was not required to disrobe, and involved less force than that which was found constitutional in *Nolin,* because Defendant used force which caused Plaintiff discomfort in her groin but did not push or shove Plaintiff during the search.

Under *Durruthy* and *Kesinger,* Defendant is entitled to qualified immunity from suit based on her actions while searching Plaintiff unless Plaintiff can demonstrate that, at the time the search was conducted on December 14, 2000, a materially similar case had already decided that what Defendant's actions were unlawful. Plaintiff has failed to sustain this burden and Defendant is entitled to qualified immunity. Plaintiff attempts to distinguish *Burns* and *Nolin* through a single, unpersuasive argument. Plaintiff argues that these cases are dissimilar from this case because there is a material distinction "between a person's legs, head, back, shoulder and wrist and ... a person's rectum and vagina." Plaintiff's Answer to Defendant's Motion for Summary Judgment, at 7. Plaintiff does not develop this point further, and the Court need not consider under what circumstances this distinction may exist. *Nolin* applies directly to this case by holding that an arresting officer may search an arrestee's groin for contraband even if this search causes the arrestee to experience pain.

Not only has Plaintiff failed to satisfy her burden of showing that Defendant's actions were unconstitutional under clearly established case law, Plaintiff has failed to refute Defendant's argument that her actions were entirely in line with the Eleventh Circuit's holding in *Nolin.* This is simply not a case in which the Court is required to defer to Defendant's street-

level resolution of a close question. *Nolin* makes clear that Defendant's actions were lawful at the time she searched Plaintiff's person on December 14, 2000 and Defendant is entitled to qualified immunity.

### 3. *The scope of Defendant's search and amount of force used did not violate the Fourth Amendment*

■ Even assuming that Defendant is not entitled to qualified immunity, several cases decided after Defendant's search of Plaintiff on December 14, 2000 make clear that Defendant's actions were fully consistent with Plaintiff's Fourth Amendment rights. In *Skurstenis v. Jones,* 236 F.3d 678 (11th Cir. Dec.28, 2000), the court considered in part the constitutionality of a female police officer's strip search of a woman arrested for driving under the influence of alcohol. In that case, the plaintiff was placed under arrest and taken to the county jail, where a female officer took the plaintiff into a restroom and instructed her to disrobe, to turn and face the wall and to squat and cough. *Id.* at 680. The plaintiff subsequently brought suit under § 1983 against the officer alleging a violation of her Fourth Amendment rights. *Id.* at 681. The court did not consider the officer's qualified immunity from suit; instead the court found that the search itself was constitutional because the decision to search the plaintiff was supported by reasonable suspicion that the plaintiff possessed a weapon at the time she was brought to the detention center and because the search was conducted in a restroom and in the presence of only a female officer. *Id.* at 682.

In *Wilson v. Jones,* 251 F.3d 1340 (11th Cir.2001), the court considered the constitutionality of an identical search conducted in the absence of reasonable suspicion that the arrestee was carrying a weapon or other contraband. In that case, the plaintiff was arrested for driving under the influence of alcohol and was taken to the county jail, where a female officer took the plaintiff into a restroom and instructed her to disrobe, to turn and face the wall and squat, spread her buttocks and cough. *Id.* at 1341. The officer also checked the plaintiff's ears, mouth, nose and breasts during the search but did not perform a visual or manual inspection of the plaintiff's rectum or vagina. *Id.* at 1341–42. The court concluded that, absent reasonable suspicion to believe that plaintiff was concealing contraband, this search violated the plaintiff' Fourth Amendment rights. *Id.* at 1343.

In *Cuesta v. School Board of Miami–Dade County,* 285 F.3d 962 (11th Cir. 2002), the court considered the constitutionality of a female police officer's search of a female arrestee who was taken to a closed room and required to disrobe, to lift her breasts to squat and cough while exposing her buttocks. The arrestee then brought suit under § 1983, arguing that her Fourth Amendment rights had been violated. *Id.* at 966. The court found to the contrary, concluding that the search conformed with the Fourth Amendment because the officer conducting the search had reasonable suspicion, based on the plaintiff's prior conduct and statements, that the plaintiff possessed a weapon or posed a threat to jail personnel. *Id.* at 969–70.

These cases establish that a female officer may, consistent with an arrestee's or detainee's Fourth Amendment rights, conduct a strip search of a female in a private location so long as the officer conducting the search has reasonable suspicion to believe that the individual possesses a weapon or contraband. In this case, Defendant had probable cause to believe that Plaintiff possessed a small quantity of cocaine. Defendant then took Plaintiff to a location where her body could not be seen by other officers on the scene or by passing civil-

ians. Notably, Plaintiff was not strip searched; instead, Defendant conducted a search underneath Plaintiff's clothing. This search resulted in Defendant's gloved hand making contact with Plaintiff's breasts and the exterior of Plaintiff's vagina. Although a piece of Plaintiff's underwear entered her rectum as a result of the force exerted by Defendant during the search, Defendant did not herself conduct a visual or manual search of Plaintiff's vagina or rectum. Plaintiff was then required to remove her sanitary pad and tear it in half in Defendant's presence. The extent of this search was, in every way, consistent with Defendant's probable cause belief that Plaintiff possessed a small quantity of cocaine and Defendant's experience with the locations in which such small quantities of cocaine may be hidden. *Skurstenis, Wilson* and *Cuesta* hold that strip searches of female detainees by female officers in private locations are consistent with the Fourth Amendment if supported by reasonable suspicion. By comparison, Plaintiff was subjected to a search underneath her clothing by a female officer in a private location upon probable cause that Plaintiff possessed a small quantity of cocaine. While the force used in this search incidentally caused Plaintiff's underwear to enter her rectum, no body cavity search was conducted and *Nolin* makes clear that a search is not rendered unconstitutionally excessive only by virtue of the discomfort with Plaintiff experienced in her groin following the search. Defendant's search conformed with Plaintiff's Fourth Amendment rights as these rights have been established by Eleventh Circuit case law.

The Court recognizes that the above cases justified the actions of law enforcement officers based on some considerations that are not present in this case. Specifically, these holdings were motivated in part by the need for prison personnel to protect themselves and other inmates from weapons which may be in the possession of incoming detainees. Here, there is no evidence that Defendant or other officers who conducted the traffic stop suspected that Plaintiff possessed a weapon or posed a threat to the officers' safety. Despite this difference, the above cases support the conclusion that Defendant's actions did not amount to a violation of Plaintiff's Fourth Amendment rights. As *Wilson* made clear, the above cases were also intended to allow law enforcement personnel to search for contraband, including drugs, which may be in the possession of arrestees or detainees. That rationale applies here because Defendant had probable cause to believe that Plaintiff was hiding a small amount of cocaine on her person. Furthermore, even if the absence of an apparent threat to the officers' safety would have justified lesser force than was used by the searching officers in *Skurstenis, Wilson* and *Cuesta,* Plaintiff experienced a less invasive search than the female arrestees whose § 1983 claims were rejected in those cases because she was not required to disrobe during the search. Therefore, despite the differences which do exist between these three cases and the present circumstances, they nonetheless make clear that Defendant's actions conformed with Plaintiff's Fourth Amendment rights.

### B. *Plaintiff's state law claims*

■ Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for battery, false imprisonment, intentional infliction of emotional distress and negligence because the only claim in Plaintiff's complaint over which the Court has original jurisdiction is dismissed as a result of this order. The Court has considered the timeliness of these claims, finds that they may still be litigated in state court prior to the four-

year statute of limitations imposed on such claims by §§ 95.11(3)(a) and (3)(o) of the Florida Statutes and concludes that remand is appropriate.

## CONCLUSION

Plaintiff has failed to demonstrate the need for Defendants to produce the CI for an in camera examination despite Defendant Miami–Dade County's assertion of the confidential informant privilege. Plaintiff has also failed to show cause for the Court to allow Plaintiff to file an oversized supplemental response to Defendants' motion for summary judgment. Finally, Defendant Golub is entitled to qualified immunity from Plaintiff's § 1983 claim because the case law as of December 14, 2000 made clear that Defendant's actions were lawful. Alternatively, even if Defendant were not entitled to qualified immunity summary judgment in Defendant's favor would be appropriate because, as a matter of law, Defendant's actions, as described by Plaintiff, were fully consistent with Plaintiff's Fourth Amendment right to be free from the use of excessive force by Defendant. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion to Compel Defendant to Answer Interrogatories is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion to Extend Time Within Which to Answer Defendants' Motion for Summary Judgment as to Counts VI and VIII is DENIED. It is further

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment is GRANTED IN PART, and summary judgment in favor of Defendant Golub and against Plaintiff is entered on Count I of Plaintiff's complaint. It is further

ORDERED AND ADJUDGED that Plaintiff's complaint and Defendant Golub's counterclaim are remanded to the Eleventh Judicial Circuit in and for Miami–Dade County, Florida. It is further

ORDERED AND ADJUDGED that Defendants' Motion In Limine to Exclude Evidence of Other Acts and Motion to Exclude Plaintiff's Proposed Expert Witness and Plaintiff's Unopposed Motion to Supplement Her Exhibit List with Exhibits One and Two of Defendants' Exhibit List are DENIED AS MOOT.

### ORDER DENYING DEFENDANT MIAMI–DADE COUNTY'S APPEAL OF MAGISTRATE JUDGE BROWN'S ORDER DENYING MOTION FOR SANCTIONS AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF COURT ORDER GRANTING SUMMARY JUDGMENT AS TO 42 USCA 1983 CLAIM

THIS CAUSE is before the Court upon Defendant Miami–Dade County's Objections to Order of Magistrate Judge Denying Motion for Sanctions, filed September 14, 2004, and Plaintiff's Motion for Reconsideration of Court Order Granting Summary Judgment as to 42 USCA 1983 Claim, filed October 15, 2004.

THE COURT has considered the motion and the pertinent portions of the record, and is otherwise fully advised in the premises. By way of background, on August 23, 2004. Magistrate Judge Brown entered an order denying Defendants' motion to impose sanctions on Plaintiff for Plaintiff's failure to attend an independent medical examination scheduled by Defendants in order to evaluate Plaintiff's claims of suffering from post-traumatic stress disorder. The magistrate judge found that Defendants refused to reschedule the examination until Plaintiff paid a cancellation fee owed as a result of Plaintiff's failure to appear for an earlier scheduled examination, and concluded that this re-

fusal violated the terms of the undersigned's July 2, 2004 order allowing the examination to be conducted on any date on which the parties could agree. Defendant Miami–Dade County has objected to the magistrate judge's order, and argues that this order violates the terms of Federal Rule of Civil Procedure 37(b)(2)(B), which provides that a district court may enter an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence."

Separately, on October 8, 2004, the Court entered an order granting summary judgment in favor of Defendant Tracy Golub and against Plaintiff on Plaintiff's claim under § 1983 that Defendant used excessive force during the search of Plaintiff's person in violation of her Fourth Amendment rights. Plaintiff now moves for reconsideration of this judgment, arguing first that Defendant's conduct was so obviously contrary to the Fourth Amendment that Defendant should have been aware that her actions were unconstitutional notwithstanding the absence of materially similar case law putting her on notice, and arguing next that the Court failed to view the evidence in Plaintiff's favor when deciding Defendant's motion for summary judgment.

### I. Defendant Miami–Dade County's Objections to Order of Magistrate Judge Denying Motion for Sanctions

Defendant Miami–Dade County objects that Magistrate Judge Brown's order should be set aside and Defendants' motion for sanctions granted under Rule 72(a), which authorizes a district court to "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Defendant has failed to meet its burden of demonstrating that Magistrate Judge Brown's order was clearly erroneous. While Defendant argues throughout that the magistrate judge failed to comply with Rule 37(b)(2), Defendant fails to address the fact that this rule permits, but does not require, the imposition of certain sanctions as punishment for one party's failure to allow the opposing party to conduct discovery. Defendant also fails to address directly the magistrate judge's conclusion that sanctions were unwarranted because Defendants could have conducted the medical examination in conformance with the undersigned's July 2, 2004 order but for Defendants' decision to recover a no-show fee from Plaintiff prior to rescheduling the examination. Under Rule 72(a), the objecting party is obliged to demonstrate that the magistrate judge was clearly wrong; Defendant Miami–Dade County has not done so here. The Court has considered the magistrate judge's rationale in denying Defendants' motion for sanctions and finds his reasoning and conclusion were reasonable in light of the parties' actions and the undersigned's earlier orders. Accordingly, Defendant's objection is denied.

### II. Plaintiff's Motion for Reconsideration of Court Order Granting Summary Judgment as to 42 USCA 1983 Claim

Plaintiff has not identified the rule of civil procedure which authorizes her motion for reconsideration, and the undersigned construe/s Plaintiff's motion as made pursuant to Federal Rule of Civil Procedure 60(b). The court in *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369–70 (S.D.Fla.2002) (citations omitted), explained in detail the purpose of Rule 60(b) motions for reconsideration as follows:

> The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. In particular, there are three major grounds which justify re-

consideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made. Instead, a motion for reconsideration is appropriate where the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented bo the Court by the parties, or has made an error not of reasoning, but of apprehension. Such problems rarely arise and the motion to reconsider should be equally rare.

Plaintiff has failed to demonstrate that reconsideration is warranted for one of the three reasons above. Plaintiff's motion for reconsideration does not rely on an intervening change in controlling law. In fact, Plaintiff relies entirely on cases, decided in 2002 and 2003, which predate or are contemporaneous with those cases on which the Court relied in granting Defendant's motion for summary judgment. Plaintiff's motion for reconsideration does not identify evidence that was not already before the Court at the time summary judgment was entered against Plaintiff. Finally, Plaintiff has not shown the need to correct a clear error or to avoid manifest injustice. Plaintiff has not addressed in any way the case law on which the Court relied in reaching its conclusion of law. Instead, Plaintiff has chosen to rely in part on cases, beginning with *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), interpreting the Eighth Amendment prohibition on cruel and unusual punishment and has

not addressed the cases discussed in the Court's order, which explain the contours of the Fourth Amendment's prohibition on excessive force by state actors. Plaintiff has chosen not to point out the ways in which she believes the Court misapplied the cases on which the undersigned did rely. Finally, while Plaintiff asserts that the Court did not view the record in her favor when deciding Defendants' motion for summary judgment, Plaintiff does not address the fact that the Court rejected certain portions of Defendants' statement of facts and instead adopted in full Plaintiff's testimony regarding the events surrounding her search by Defendant Golub. In sum, Plaintiff has failed completely to demonstrate that reconsideration is warranted of the Court's legal conclusions or statement of the undisputed facts in this case.

For these reasons, it is hereby

ORDERED AND ADJUDGED that Defendant Miami–Dade County's Objections to Order of Magistrate Judge Denying Motion for Sanctions are DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Reconsideration of Court Order Granting Summary Judgment as to 42 USCA 1983 Claim is DENIED.

### *ORDER DENYING AS MOOT PLAINTIFF'S MOTION TO CONSIDER SUPPLEMENTAL FACTS AND LAW RELATING TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF COURT ORDER GRANTING DEFENDANT'S 42 USCA 1983 CLAIM*

THIS CAUSE is before the Court upon Plaintiff's Motion to Consider Supplemental Facts and Law Relating to Plaintiff's Motion for Reconsideration of Court Order Granting Defendant's 42 USCA 1983, filed November 19, 2004.

THE COURT has considered the motion and the pertinent portions of the record, and is otherwise fully advised in the premises. Plaintiff's motion asks the Court to consider certain additional facts and case law in deciding Plaintiff's motion for reconsideration; Plaintiff's motion for reconsideration, however, has already been denied by the Court. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion to Consider Supplemental Facts and Law Relating to Plaintiff's Motion for Reconsideration of Court Order Granting Defendant's 42 USCA 1983 Claim is DENIED AS MOOT.