United States Court of Appeals,

Eleventh Circuit.

No. 96-6829.

Rubin J. JONES, Sr., Martha Ann Jones, Plaintiffs-Appellees,

v.

The CITY OF DOTHAN, ALABAMA, Kevin Wright, Michael Etress, Danny McGriff, each individually, Defendants-Appellants.

Sept. 17, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. Cv95-C-193-S), John L. Carroll, District Judge.

Before ANDERSON and COX, Circuit Judges, and ALARCON[*], Senior Circuit Judge.

PER CURIAM:

Michael Estress and Kevin Wright appeal the magistrate judge's denial of their motion for summary judgment predicated on qualified immunity in this civil rights action filed by Ruben and Martha Jones.[1] We reverse.

## I. BACKGROUND[2]

The Joneses' action arose from events that occurred on February 11, 1994. On that day, Rhonda Schofield telephoned the Dothan police department to report that a man who had previously been harassing her had just chased her from the inside of her place of employment. Estress and Wright, two Dothan police officers, quickly arrived on the scene and began questioning Schofield about the harasser. She described him as a black male standing about 5′8″ to 5′10″ tall, weighing about 150 to 160 pounds, and wearing a hat, khaki pants, and a two-toned blue jacket that perhaps

---

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties waived their rights to proceed before the district court and consented to having a magistrate judge conduct the proceedings.

[2]We derive the background facts primarily from those contained in the magistrate judge's Memorandum Opinion and Order. For the present purposes, we state the facts in the light most favorable to the Joneses. This being so, they may not be the actual facts. *See Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1421 n. 1 (11th Cir.1997).

had some green material on it.  She stated that she last saw him walking towards the nearby Dairy Queen.

Estress and Wright proceeded to the Dairy Queen.  As they stepped inside its doors, they observed Mr. Jones exiting from the restroom.  Like the harasser they were pursuing, Mr. Jones was a black male standing about 5′8″ tall, weighing about 160 pounds, and wearing a hat, khaki pants, and a blue jacket that had some light blue or teal material around the shoulders.  Believing that Mr. Jones might be the harasser, Estress and Wright approached him, told him that he had to step outside, and escorted him by his arm and belt towards the exit.  On the way, Mr. Jones questioned Estress and Wright about why they were doing this to him.  They did not respond.  Mr. Jones then told them that he had not done anything wrong, had previously suffered a stroke, and was currently taking medication.  Nonetheless, once outside, Estress and Wright "slammed" Mr. Jones against a wall, kicked his legs apart, required him to put his arms above his head, and pulled his wallet from his pants pocket.  In the process, his pants were torn and the wallet contents were scattered on the ground.

During this encounter, Mrs. Jones explained to Estress and Wright that she was Mr. Jones's wife.  She pleaded with them not to be rough with Mr. Jones since he had previously suffered a stroke and questioned them about why they were targeting her husband.  Wright responded that he was an officer, that he was doing his job, and that he needed to ask her husband some questions.  Estress responded that he did not care about who she was or about the stroke, that she should "shut-up," and that she should go back inside the Dairy Queen or face arrest.  When Mrs. Jones retorted that Estress could not tell her to "shut-up" and that she had a right to know what was happening, Estress told her again to "shut-up" and put his finger in her face, making contact with her skin and causing her a stinging sensation.[3]  At that point, Mrs. Jones got into her car, shouted to Estress and Wright that she was going to get her attorney, and left the scene.

---

[3]Mrs. Jones's deposition testimony is not entirely clear on whether it was Estress or Wright who twice told her to shutup.  The testimony read as a whole, however, reveals that it most likely was Estress.

Soon after, Schofield arrived at the Dairy Queen to see if Mr. Jones was the harasser. After looking at Mr. Jones, Schofield told Estress and Wright that he was not the harasser, but that he closely resembled him. At this, Estress and Wright released Mr. Jones, some thirteen minutes after their arrival at the Dairy Queen.

Almost one year later, the Joneses filed a 42 U.S.C. § 1983 action against Estress and Wright, claiming that Estress and Wright (1) violated Mr. Jones's Fourth Amendment right to be free from unreasonable searches and seizures; and (2) violated Mrs. Jones's Fourteenth Amendment right to substantive due process.[4] Following discovery, Estress and Wright moved for summary judgment predicated on qualified immunity. They now appeal the magistrate judge's denial of that motion. They raise one issue: whether the magistrate judge erred in concluding that they violated clearly established law.[5]

## II. DISCUSSION

Qualified immunity shields government officials performing discretionary functions from civil litigation and liability where "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[6] Under this standard, a plaintiff must show that when the defendant acted, the law was "developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing' violates federal law." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994)(en banc)(citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97

---

[4]The Joneses asserted other claims against Estress and Wright. Those claims are not involved in this appeal. The Joneses also asserted claims against Dothan Police Chief Danny McGriff and the City of Dothan. Although the notice of appeal names McGriff and the City as appellants, the claims against them are not involved in this appeal.

[5]We have jurisdiction to review this issue. *See Behrens v. Pelletier,* --- U.S. ----, ----, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996); *Foy v. Holston,* 94 F.3d 1528, 1531 n. 3 (11th Cir.1996). Our review is de novo. *See Montoute v. Carr,* 114 F.3d 181, 183 (11th Cir.1997).

[6]The parties do not dispute that Estress and Wright were acting within their discretionary authority at all relevant times.

L.Ed.2d 523 (1987)).  Below, we further expound on this standard and address Estress's and Wright's entitlement to qualified immunity on each of the Joneses' claims.

A. *Mr. Jones's Fourth Amendment Claims*

The magistrate judge interpreted the Joneses' complaint to assert two distinct Fourth Amendment unreasonable search and seizure claims:  (1) unreasonable patdown and (2) excessive force.[7]  With regard to the unreasonable patdown claim, the magistrate judge concluded that Estress and Wright were not entitled to qualified immunity since the law was clearly established on February 11, 1994, that a patdown to discover weapons must be based on a reasonable suspicion that the suspect is armed and dangerous.  For this proposition, the magistrate judge cited *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), and two appellate cases from outside of our circuit.

The magistrate judge's qualified immunity analysis falls short of the fact-intensive inquiry that the qualified immunity standard demands.  *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *see also Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)(stating that the qualified immunity standard demands that the defendant cross "a bright line" that is "not found in abstractions—to act reasonably, to act with probable cause, and so on—but in studying how these abstractions have applied in concrete circumstances"), *modified,* 14 F.3d 583 (11th Cir.1994). Rather than basing its analysis solely on a general proposition, the magistrate judge should have applied the facts of this case and asked whether, as of February 11, 1994, it was clearly established that it was unconstitutional for officers to patdown a man suspected of repeatedly harassing a woman and chasing her from her place of employment where the officers neither handcuffed nor placed the man in a patrol car, and where the officers expected to remain in the man's presence pending identification by the victim.  *See Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994).

---

[7]The Joneses did not object to this interpretation before the magistrate judge or in this court. We therefore deem waived any Fourth Amendment claim related to the removal of Mr. Jones's wallet.

Neither *Terry* nor *Ybarra* involve sufficiently similar facts such that it would be readily apparent to Estress and Wright that their conduct was unconstitutional. *Terry* involved an immediate patdown of a suspicious-acting man who was not being detained pending identification by a victim. *See Terry,* 392 U.S. at 5-7, 88 S.Ct. at 1871-72. The Court made it clear that its holding revolved around that particular situation and that Fourth Amendment search and seizure limitations would "have to be developed in the concrete factual circumstances of individual cases." *See id.* at 29, 88 S.Ct. at 1884. *Ybarra* involved a patdown of a patron who happened to be in a bar for which police had a search warrant. *See Ybarra,* 444 U.S. at 87-89, 100 S.Ct. at 340-41.

As we have stated often, " "[p]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.' " *See Jenkins v. Talladega City Bd. of Educ.,* 115 F.3d 821, 827 (11th Cir.1997)(en banc)(quoting *Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1575 (11th Cir.1992)(Edmundson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993)). Mr. Jones has not directed us to, and we have not found, any law that would have made it readily apparent to reasonable officers in Estress's and Wright's position that their conduct was unconstitutional. Accordingly, they are entitled to qualified immunity on Mr. Jones's unreasonable patdown claim.

With regard to the excessive force claim, the magistrate judge concluded that Estress and Wright were not entitled to qualified immunity since "on February 11, 1994, the law was clearly established that use of excessive force by a law enforcement officer is a constitutional violation." (R.45 at 27.) Again, this analysis falls short of the fact-intensive inquiry that the qualified immunity standard demands.

In *Post,* we held that an officer is entitled to qualified immunity from an excessive force claim "unless application of the [excessive force] standard would inevitably lead every reasonable [official] in [the officer's] position to conclude the force was unlawful." *See, Post,* 7 F.3d at 1559. The excessive force standard is based on reasonableness. It looks to the need for force, the amount of force used, and the injury inflicted. *See Leslie v. Ingram,* 786 F.2d 1533, 1536 (11th Cir.1986).

5

The facts viewed in the light most favorable to Mr. Jones show that Estress and Wright "slammed" Mr. Jones against the wall, kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants. They also show that Mr. Jones experienced pain from having to lift his arms since he had previously suffered a stroke, and that he experienced pain in his arthritic knee from having his legs kicked apart. They further show that he received minor medical treatment for pain in his arthritic knee three days after the incident.

These facts resemble those involved in *Post.* There, an officer put the plaintiff into a choke-hold and pushed him into a wall. We held that while the pushing may have been unnecessary, the application of the excessive force standard would not inevitably lead an official in the officer's position to conclude that the force was unlawful since the amount of force was minimal. *See id.* at 1560. We reach a similar holding here. While use of force against Mr. Jones may have been unnecessary, the actual force used and the injury inflicted were both minor in nature. Given such variables, the application of the excessive force standard would not inevitably lead an official in Estress's and Wright's position to conclude that the force was unlawful. Accordingly, Estress and Wright are entitled to qualified immunity on Mr. Jones's excessive force claim.

B. *Mrs. Jones's Fourteenth Amendment Claim*

The magistrate judge interpreted the Joneses' complaint to assert a Fourteenth Amendment substantive due process right to be free from excessive force claim. With regard to this claim asserted by Mrs. Jones, the magistrate judge implicitly found that Estress and Wright violated clearly established law.

In *Wilson v. Northcutt,* 987 F.2d 719, 722 (11th Cir.1993), we recognized that under some circumstances, an individual not actually seized by an officer may have a Fourteenth Amendment substantive due process right to be free from excessive force used on them by the officer. Similar to the standard used to evaluate Fourth Amendment excessive force claims, the standard used to evaluate substantive due process excessive force claims looks to a number of factors, including "the need for force and the amount of force used, the extent of injury inflicted, and whether force was

6

applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *See id.* (quotations omitted). Again similar to the standard used to evaluate Fourth Amendment excessive force claims, this standard does not establish a "bright line" that would readily alert officers to a violation. *See Post,* 7 F.3d at 1559. Therefore, "qualified immunity applies unless the application of the standard would inevitably lead every reasonable [official] in [the officer's] place to conclude the force was unlawful." *See id.*

The facts viewed in the light most favorable to Mrs. Jones show that Estress yelled at her, twice told her to shut-up, ignored her pleas regarding her husband, and stuck his finger in her face, making contact with her skin and causing a stinging sensation. We seriously doubt that such actions, though rude, rise to the level of a substantive due process violation. However, even assuming they do, the application of the substantive due process excessive force standard certainly would not inevitably lead every reasonable officer in Estress's position to conclude that the force was unlawful since the amount of force was minimal and the injury was negligible. Accordingly, Estress is entitled to qualified immunity on Mrs. Jones's substantive due process claim. Wright is entitled to qualified immunity on the claim since Mrs. Jones has not cited, and we have not found, any case clearly establishing that he had a duty to intervene in Estress's actions.

### III. CONCLUSION

Estress and Wright are entitled to qualified immunity on each of the Joneses' constitutional claims. Accordingly, we reverse the magistrate judge's denial of their motion for summary judgment on those claims, direct that judgment be entered in favor of Estress and Wright on those claims, and remand for further proceedings.

REVERSED and REMANDED.