Joyce H. STACHEL and Robert D. Stachel, Plaintiffs,

v.

CITY OF CAPE CANAVERAL, a Florida municipal corporation, Phillip B. Williams, in his official capacity as Sheriff of Brevard County, Florida, James F. Watson, and Donald W. Eggert, Defendants.

No. 98–628–CIV–ORL–18C.

United States District Court, M.D. Florida, Orlando Division.

June 22, 1999.

**1328**

Robert W. Smith, Law Office of Robert W. Smith, Orlando, FL, for Joyce H. Stachel, Robert D. Stachel.

Michael J. Roper, Bell, Leeper & Roper, P.A., Orlando, FL, for City of Cape Canaveral, a Florida municipal corporation, defendant.

D. Andrew DeBevoise, Bobo, Spicer, Ciotoli, Fulford, Bocchino, DeBevoise & Le Clainche, P.A., Orlando, FL, for Phillip B. Williams, Donald W. Eggert, defendants.

Ronald E. Solomon, Solomon & Morrow, P.A., Fort Lauderdale, FL, for James F. Watson, defendant.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiff Joyce H. Stachel ("Stachel") brings the instant action against defendants James F. Watson ("Watson") and Donald W. Eggert ("Eggert") alleging violations of her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 (" § 1983"). The plaintiff also alleges claims under state law for battery, false arrest, and malicious prosecution against defendants City of Cape Canaveral ("the City"); Phillip B. Williams, in his official capacity as Sheriff of Brevard County ("Williams"); James F. Watson; and Donald W. Eggert. Plaintiff Robert D. Stachel asserts a claim for loss of consortium based on the wrongful acts of the defendants against his wife, Joyce H. Stachel. The case is presently before the court on the defendants' motions for summary judgment to which the plaintiff's have responded in opposition. Following a review of the case file and relevant law, the court concludes that the defendants' motions should be granted as to the § 1983 claims and the state law claims should be dismissed for lack of jurisdiction.

### I. Factual Background [1]

On January 24, 1997, Plaintiff Joyce Stachel was the resident manager of the Windjammer Condominium in Cape Canaveral, Florida. On that date, James F. Watson and Donald W. Eggert appeared in Stachel's office at the Windjammer Condominium in order to have her sign a fire inspection form ("the form"). Watson was at that time the Fire Marshall of the defendant City of Cape Canaveral and Eggert was a Deputy Sheriff with the Brevard County Sheriff Department. Stachel told Watson that the form was incorrect and she did not have the authority to sign it. However, the plaintiff eventually signed the form and Watson and Eggert began to leave the premises. After she signed the form, the plaintiff discovered that Watson had made misrepresentations as to her employer's liability for what was contained in the form. The plaintiff followed Watson and Eggert and demanded that they return the form to her. When they refused, the plaintiff grabbed the form off of Watson's clipboard and proceeded to tear it up. At this point, Eggert and Watson held the plaintiff's arms behind her back, forced her to her knees on the concrete floor, and handcuffed her.

---

1. For purposes of summary judgment, the court views the facts in the light most favorable to the plaintiff.

She was arrested and charged with obstructing a firefighter and resisting without violence. The charges against the plaintiff were later dropped.

## II. Legal Discussion

### A. *Summary Judgment Standards*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (quoting *First Nat'l. Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. *The Merits of the Defendants' Motions*

In Count I of the Complaint, the plaintiff claims that Watson and Eggert violated her rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983. In Count II, the plaintiff states a cause of action against Watson and Eggert for malicious prosecution in violation of Florida law. Counts III and IV allege state law claims for battery and false arrest/false imprisonment against the City and Williams.

#### 1. *Count I—42 U.S.C. § 1983*

Watson and Eggert argue that summary judgment should be granted as to Count I because they are entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from civil liability where " 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Gold v. City of Miami*, 121 F.3d 1442,1445 (11th Cir.1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

First, the plaintiff asserts that Watson was not acting within his discretionary duty when the complained of acts took place because he was "engaged in a program of extortion." (Doc. 40, Pl.Resp. p. 11). No evidence, however, was offered to support this claim and the facts indicate that Watson was acting within his discre-

tionary authority as a fire inspector.[2] As for Eggert, it is undisputed that he was acting within the course and scope of his duties as a deputy sheriff at the time of the alleged violation. Thus, the issue before the court is whether the law was clearly established at the time of the plaintiff's arrest and whether the defendants' conduct violated that clearly-established law.

 The plaintiff contends that Watson and Eggert are not entitled to qualified immunity because there was no probable cause to arrest her and they used excessive force in effectuating the arrest. The court will first determine whether Watson and Eggert are entitled to qualified immunity on Stachel's claim that they violated her First, Fourth and Fourteenth Amendment rights by falsely arresting her for interfering with a fire inspector and resisting without violence. The central issue in making this determination is whether, at the time of Stachel's arrest, the defendants had arguable probable cause to believe that Stachel had committed the aforementioned offenses. *See Gold*, 121 F.3d at 1445 (citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990)). Arguable probable cause, which is distinct from actual probable cause, is found where a reasonable officer "could have believed that probable cause existed." *Moore v. Gwinnett County*, 967 F.2d 1495, 1497 (11th Cir.1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993).

Section 806.10(2) of the Florida Statutes provides that "Any person who willfully or unreasonably interferes with, hinders, or assaults, or attempts to interfere with or hinder, any firefighter in the performance of his or her duty shall be guilty of a felony of the third degree...." § 806.10(2) Fla.Stat. A " 'Firefighter' means any person ... whose primary responsibility is the prevention and extinguishment of fires,

the protection and saving of life and property, and the enforcement of municipal, county, and state fire prevention codes, as well as of any law pertaining to the prevention and control of fires." § 633.30 Fla. Stat. (emphasis added). Thus, when the plaintiff tore the form off of Watson's clipboard and proceeded to tear it up, it was reasonable for Eggert and Watson to believe that the plaintiff was interfering with a firefighter's attempt to fulfill one of his primary responsibilities.

The plaintiff argues that there was no probable cause for her arrest under § 806.10 because that section only applies to firefighters who are extinguishing a fire or attempting to save someone's life. In *Robinson v. State of Florida*, 673 So.2d 114, 115 (Fla. 4th DCA 1996), the court found that the defendant violated § 806.10 by refusing to move his vehicle when told by a firefighter that it was blocking the path of an emergency medical vehicle. *See id.* The court in *Robinson* read § 633.30 *in pari materia* with § 806.10 to find that § 806.10 is violated by interfering with a firefighter performing a duty delineated in § 633.30. *See id.* Enforcing fire prevention codes is one of the primary responsibilities of a firefighter under § 633.30 and it was reasonable for Eggert and Watson to believe that Stachel was interfering with the performance of that duty when she tore up the fire inspection form. Therefore, the defendants are entitled to qualified immunity because they had arguable probable cause to arrest Stachel for violating § 806.10(2).

 The plaintiff also claims that the defendants are not entitled to qualified immunity because there was no probable cause to arrest her for resisting without violence in violation of § 843.02 Florida Statutes. However, whether Eggert had probable cause to arrest Stachel for resist-

---

**2.** The plaintiff admits that Watson was attempting to get her to sign a fire inspection form. This is within the scope of a fire inspector's duties. Section 633.052(1)(a) of the Florida Statutes states that "A 'firesafety in-

spector' is an individual ... officially assigned the duties of conducting firesafety inspections of buildings and facilities ..., investigating civil infractions relating to firesafety, and issuing citations...." § 633.052(1)(a) Fla.Stat.

ing without violence is irrelevant to determining whether the plaintiff has a cognizable claim for false arrest under § 1983. *See Sholley v. Town of Holliston,* 49 F.Supp.2d 14 (D.Mass.1999). The court in *Wells v. Bonner,* 45 F.3d 90 (5th Cir.1995), stated that:

> The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest. If there is probable cause for any of the charges made—here either [interfering with a firefighter or resisting without violence]—then the arrest was supported by probable cause, and the claim for false arrest fails.

*Id.* at 95. "The arrest was a single, indivisible event." *Sholley,* 49 F.Supp.2d at 18–19. Thus, because there was arguable probable cause for the charge of violating § 806.10(2), the arrest was supported by probable cause and the claim for unconstitutional arrest fails.

██ The court next determines whether the defendants are entitled to qualified immunity on the plaintiff's claim that the defendants violated her constitutional rights by using excessive force when arresting her. The plaintiff alleges that after she started to tear up the form, Watson and Eggert each grabbed one of her arms while planted his knee in the small of her back and forced her to her knees on the concrete floor. The plaintiff claims that this use of force was excessive and unnecessary because of the disparity in physical size and age between herself and the defendants, and the fact that she was not resisting or attempting to flee. However, even if this use of force was unnecessary, the defendants are entitled to qualified immunity unless it was clearly established that the amount of force used was unlawful. *See Goodman v. Town of Golden Beach,* 988 F.Supp. 1450, 1456 (S.D.Fla.1997). "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). There is no

bright-line standard regarding the use of force. Thus qualified immunity applies unless the circumstances would inevitably lead a reasonable officer in the defendant's position to conclude that the force used was unlawful. *See Gold,* 121 F.3d at 1446; *Post,* 7 F.3d at 1559.

In her deposition, Stachel stated that as she was tearing up the form, Watson grabbed her hand. (Pl.Depo. p. 17). When Watson grabbed her hand, she dropped the form on the floor. (Pl.Depo. p. 18). Even though Watson was holding her hand, the plaintiff attempted to retrieve the form by bending down to pick it up off the floor. (Pl.Depo. p. 18). At this point, Eggert grabbed her other arm and forced her to her knees on the concrete floor. (Pl.Depo. p. 18). Stachel testified that she informed the defendants that her hands should not be pulled behind her back because of her back problems and Eggert said that was "okay." (Pl.Depo. p. 18). Eggert then asked the plaintiff to put her hands in front of her and she was handcuffed. (Pl.Depo. p. 18).

Faced with Stachel's continuing attempt to retrieve the form, even after Watson grabbed her hand, Eggert could have reasonably concluded that the amount of force he used was lawful. In *Jones v. City of Dothan,* 121 F.3d 1456 (11th Cir.1997), the Eleventh Circuit held that qualified immunity applied to police officers who slammed the plaintiff against a wall, kicked his legs apart, and required him to raise his hands above his head. *See id.* At 1460. The plaintiff in *Jones* was not resisting or attempting to flee. *See id.* at 1458. Furthermore, because the plaintiff had previously suffered a stroke and had an arthritic knee, he experienced pain when he was forced to lift his arms and from having his legs kicked apart. *See id.* at 1460. Under those circumstances, the Eleventh Circuit held that the force was minimal and not unlawful. *See id.* This court reaches a similar conclusion in the present case. While the use of force to arrest Stachel may have been unneces-

sary, the actual force used was minimal and not plainly unlawful. The defendants are thus entitled to qualified immunity.

### 2. Counts II–IV—State law claims

■■ The remaining claims for malicious prosecution[3], battery, and false arrest/false imprisonment against Watson, Eggert, the City, and Williams are state law claims. The court may sua sponte raise a jurisdiction defect at any time. *See Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir.1992). The court, therefore, will examine whether it continues to have jurisdiction over this action.

The state claims previously were before the court properly as supplemental claims supported by the plaintiff's § 1983 claim. *See* 28 U.S.C. § 1367(a). However, with the dismissal of the § 1983 claim, there remains no independent original federal jurisdiction to support the court's exercise of supplemental jurisdiction over the state claims against the defendants.

■■ Under 28 U.S.C. § 1367(c), the court has discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the court has dismissed all claims over which it has original jurisdiction, but it is not required to dismiss the case. *See Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1567 (11th Cir.1994) As the Eleventh Circuit made clear in *Palmer*, if a court has power to exercise supplemental jurisdiction under section 1367(a), then the court should exercise that jurisdiction unless section 1367(b) or (c) applies to limit the exercise. In this case, section 1367(c) applies because the court "has dismissed all claims over which it has original jurisdiction;" namely the plaintiff's § 1983 claim. *See* 28 U.S.C. § 1367(c). Therefore, considering that the plaintiffs' state law claims depend on determinations of state law and that the court has discretion

under section 1367(c) to exercise supplemental jurisdiction, the court finds that the remaining state law claims are best resolved by Florida courts. This is especially true where the court is dismissing the plaintiff's federal law claim prior to trial. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating that the dismissal of state law claims is strongly encouraged where the federal law claims are dismissed before trial).

### III. Conclusion

For all of the reasons set forth above, the court finds that Watson and Eggert are entitled to qualified immunity on the plaintiff's § 1983 claims. Therefore, the court **GRANTS** the defendants' motions for summary judgment as to Count I. The court **DISMISSES** the plaintiffs' state law claims, Counts II–IV, **WITHOUT PREJUDICE.** Accordingly, the court directs the clerk of the court to enter the appropriate judgment and to close the case.

---

**3.** Although the Eleventh Circuit has recognized a section 1983 claim for malicious prosecution, *see Whiting v. Traylor*, 85 F.3d 581, 584 n. 4 (11th Cir.1996), the plaintiff's claim is specifically grounded in state law and points to no constitutional violation. *See generally Eubanks v. Gerwen*, 40 F.3d 1157, 1161–62 (11th Cir.1994) (recommending that the district court dismiss plaintiff's state law claim for malicious prosecution where the federal claims had been disposed of at the summary judgment stage).