[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10695
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-25217-RNS

DARA CLARKE,

                                                        Plaintiff – Appellee,

versus

TERRY SCOTT,
individually,
JOSEPH CRAIG,
individually,

                                                        Defendants – Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 31, 2018)

Before TJOFLAT, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

This case arises from a tangled property-rights dispute between multiple homeowners and a group of developers in Aventura, Florida, but the present appeal is more limited in scope. Dara Clarke, one of those homeowners, alleges that Terry Scott and Joseph Craig, two officers of the Aventura Police Department, used excessive force when arresting her after she assisted in intentionally damaging a concrete sidewalk constructed by the developers.

Clarke sued Scott and Craig for damages pursuant to 42 U.S.C. § 1983.[1] The officers moved for summary judgment, asserting a qualified immunity defense and arguing that the force used was *de minimis*. The District Court denied their motion. The officers appeal. We affirm.

## I.

In this review of the District Court's denial of Scott and Craig's summary judgment motion, we "accept [Clarke's] version of the facts as true and draw all reasonable inferences in the light most favorable to [her] as the non-movant." *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). Clarke owns a home in the Island Estates development, located in Dumfoundling Bay in Aventura. The bay includes two small islands: one with a number of residential homes, including Clarke's (the "South Island"), and another adjacent to the north (the "North Island"). A single road connects both islands to the mainland. The only way to

---

[1] Clarke also pursued a number of other claims against other defendants, but they are not relevant to this appeal.

2

reach the North Island by vehicle is to first pass through the South Island on this road.

In 2013, private developers planned to construct two condominium buildings on the North Island.  In order to receive permits, the developers were required to construct a pedestrian sidewalk on the South Island.  Clarke and some other homeowners on the South Island opposed sidewalk construction on land they claimed to own.  The homeowners filed a state-court lawsuit seeking an injunction to prevent the construction.

In September 2014, the Circuit Court for the Eleventh Judicial Circuit entered an order temporarily enjoining the developers from constructing the sidewalk.  The developers appealed.  On February 25, 2015, the Third District Court of Appeal reversed the injunction due to a failure to join indispensable parties.  *Two Islands Dev. Corp. v. Clarke*, 157 So. 3d 1081, 1085 (Fla. Dist. Ct. App. 2015).  The developers resumed construction the next day.

Clarke engaged in ambitious efforts to prevent the construction that morning.  She parked two vehicles owned by her and her husband in the swale where the sidewalk was to be built.  She directed some workers from her home to sit on top of the vehicles to prevent them from being towed.  And she sat in the construction zone on her neighbor's property after another vehicle that had been parked in the way was towed.

3

Around noon, Clarke learned that the Circuit Court would not hear an emergency motion to reinstate the temporary injunction that day. She left the property with the understanding that construction would continue. Clarke returned at around 5:30 PM to find that wet concrete had been poured inside wooden forms on the swale in front of her home.

Clarke wanted to delay construction until the Circuit Court convened another hearing on the homeowners' request for injunctive relief. She left her home to pick up her husband, and they returned to the home shortly after 6:00 PM together in his SUV. Upon their return, Clarke's husband drove through the wet concrete on the swale and damaged it. Charles Phelan, an agent of the developers, was nearby during this incident. After he spotted the damaged concrete, Phelan approached the couple and asked what they had done. Clarke laughed as her husband responded that they had given Phelan "something to do tomorrow."

Clarke and her husband then left the area to retrieve her vehicle that she had parked at a nearby marina. Phelan followed them in his vehicle. Phelan called Gary Cohen, another agent of the developers, and told him what had been done. Cohen called the police. Meanwhile, after Clarke got to her vehicle, she noticed that Phelan had been following them and had turned around back in the direction of Clarke's home. Clarke followed Phelan back to her home and also called the police herself.

4

Sergeant Terry Scott and Joseph Craig, two officers of the Aventura Police Department, arrived on the scene at Clarke's home. They first spoke with Phelan. While they were speaking, Clarke approached the officers. The officers asked Clarke about the damage. She replied that she "could do whatever [she wanted]" with the concrete because it was on her property. Clarke attempted to show Officer Craig a property survey on her cell phone to prove that the damaged concrete was on property that she owned, but he would not look at it. Clarke then turned to Scott and said "I understand that you are a sergeant . . . Why is [Craig] being so disrespectful?"

Scott and Craig then exchanged a glance before Scott stomped on Clarke's right foot and grabbed one of her arms, twisting it behind her back. Craig grabbed Clarke's other arm, bringing it behind her back, and the officers tightly handcuffed her. Scott and Craig then lifted Clarke in the air for thirty to sixty seconds. The combination of the lift and the tight handcuffs injured Clarke's shoulder. Clarke was arrested for criminal mischief, disorderly conduct, and resisting arrest without violence and was taken to Miami-Dade County Jail. She was released on bond the next morning.

After her release, Clarke's husband took photographs of an elbow abrasion and bruising on Clarke's right foot, calf, and arm. Clarke also noticed she had left shoulder pain about a week after the incident. She sought treatment for the

5

shoulder injury.  This incident and its results gave rise to Clarke's lawsuit—and Scott and Craig's appeal—which we discuss here.

## II.

When a motion for summary judgment is based on a qualified immunity defense and a district court denies the motion, the denial constitutes a final decision from which we have jurisdiction under 28 U.S.C. § 1291 if the appeal involves a question of law.  *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

We resolve qualified immunity claims under a two-step sequence: "whether the facts as reviewed make out a violation of a constitutional right, and if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct."[2]  *Crocker*, 886 F.3d at 1135.  Both steps of this sequence are reviewed *de novo*.  *Id.* at 1136.

Here, the actions of Scott and Craig violated Clarke's Fourth Amendment rights.  Her attempt to show the officers a land survey on her cell phone, without a

---

[2] As a threshold matter, in order to claim qualified immunity, a public official must first establish that he was engaged in a "discretionary duty."  *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005).  This is undisputed here.

6

showing of hostility or inclination toward violence,[3] cannot warrant the use of force that was shown in return. *See Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011) (stating "that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment.").

Nor was that force *de minimis* in context. Clarke required medical treatment for force that was used against her when the circumstances warranted none. Scott and Craig argue that this is irrelevant, pointing to a few precedential fact scenarios in which *de minimis* force was used and an arrestee was hurt. But they are readily distinguished: they involve non-compliance with an officer's lawful order, an officer's response to the use of force by the arrestee against a bystander, or an officer's reasonable belief that the arrestee had just harassed and threatened a bystander. *See Croom v. Balkwill*, 645 F.3d 1240, 1245 (11th Cir. 2011); *Nolin v. Isbell*, 207 F.3d 1253, 1254–55 (11th Cir. 2000); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir. 1997). Our inquiry is a fact-intensive one, and these distinguishing characteristics change the situations considerably. The present case is much closer to *Fils* in that no hostility or violence was shown by Clarke before force was used against her.

---

[3] Scott and Craig dispute that this was the case, but we must accept Clarke's version of the facts in this posture.

Similarly, *Fils* is sufficient to show that the right was clearly established at the time of Clarke's arrest.   Clear establishment is shown by one of three methods: (1) "case law with indistinguishable facts clearly establishing the constitutional right," (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009).

Focusing on the second of these, the broad statement of principle within *Fils*—"unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights"—controls here.  *Fils*, 647 F.3d at 1289.  Under Clarke's version of the facts, she was "non-hostile and non-violent" and she "ha[d] not disobeyed instructions."  *See id.*  Therefore, "unprovoked force," such as the sequence of events that Clarke described, constitutes excessive force.  *See id.*

## III.

Scott and Craig's motion for summary judgment must be denied because, under Clarke's version of the facts, they are not entitled to judgment as a matter of law.  The force they used was not *de minimis* and they cannot receive the benefit of qualified immunity.  Therefore, we affirm the District Court's denial of the motion.

**AFFIRMED.**

8