[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11890

_____

LATOYA GLENN,
as Parent, Guardian and as next friend,
A.G.,

Plaintiff-Appellant,

*versus*

SHANE BRITT,
DERRICK PATRICK BARTLETT,

Defendants-Appellees,

CHRISTOPHER EDGAR,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-04858-SCJ

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

This appeal involves a claim under 42 U.S.C. § 1983 for excessive force, arising out of a December 13, 2018, altercation between A.G.[1] and school resource officers Shane Britt and Derrick Bartlett at Alcovy High School.[2]   The district court granted summary judgment for the defendants because the court found that the officers had not violated A.G.'s Fourth Amendment right to be free from excessive force and were entitled to qualified immunity.  Because we find that the officers used only *de minimis* force in restraining A.G. and, thus, did not violate A.G.'s Fourth Amendment rights, we affirm.

## I.      Background

_____

[1] A.G.'s mother, Latoya Glenn, has sued on his behalf.

[2] Because the district court granted summary judgment for the defendants, we view the following facts in the light most favorable to Glenn as the non-moving party.  *See Richmond v. Badia*, 47 F.4th 1172, 1178 (11th Cir. 2022).  We have also reviewed videos of the incident that were submitted with the defendants' motion for summary judgment.

In December 2018, A.G. was a 14-year-old ninth grader at Alcovy High School.  On the morning of December 13, 2018, A.G. was part of a large group of students gathered in the common area of the school waiting for classes to begin.  A friend informed him that students had managed to open a vending machine in the common area and were grabbing items from within.  A.G. accompanied his friend to the vending machine and took a Snickers bar.

According to Coach Christopher Edgar,[3] fights between students had become common at Alcovy.  On the day in question, due to the large commotion, an increase in noise, and students rushing to the area, Coach Edgar proceeded to the vending machine believing that a fight was ongoing.  At the same time, three of the school resource officers[4]—including the defendants, Officers Britt and Bartlett—noticed the commotion and moved to

---

[3] At the time of the incident, Coach Edgar was the varsity high school football coach at Alcovy and an employee of the school.  Coach Edgar was initially named as a defendant in this suit, but he was terminated from the suit and granted judgment on the pleadings on March 25, 2022, because Glenn alleged only a single, brief instance of physical contact and minor physical injuries that were insufficient to substantiate an excessive corporal punishment claim as a matter of law, and he was entitled to official immunity for the state tort claim of battery.  The district court also noted that Glenn had failed to name Coach Edgar in either the claim for excessive force or excessive corporal punishment, though the district court ultimately analyzed and dismissed the latter claim.  The plaintiff did not appeal that decision.

[4] "School resource officers" are police officers assigned to the school "to help prevent crime and violence and enhance safety on school grounds."

the scene.[5]  Officers Britt and Bartlett found Coach Edgar physically separating A.G. and another student and believed the students were fighting.  Glenn conceded below and on appeal that she did not dispute the officers' belief that the students were fighting and were in danger of being harmed when they arrived at the scene.

Once they arrived, Officer Britt took over for Coach Edgar and began separating the two students.[6]  With one hand on each student, Officer Britt extended his right hand towards A.G. and made contact around A.G.'s shoulder and neck, allegedly choking him and inhibiting his breathing.[7]  Officer Bartlett then intervened, picking up A.G. at the waist, carrying him away from the center of the action, throwing him to the ground, and dragging him across the floor.  As a result, A.G.'s head struck the brick wall.[8]

Shortly thereafter, Officers Britt and Bartlett discovered that the commotion around the vending machine was not a student

---

[5] A third officer, Latavia Washington, reported to the scene as well but was not named as a defendant in this suit.  When Officer Washington arrived at the scene, she grabbed a student who was not A.G.

[6] A witness recorded the altercation on his cell phone, and we have viewed and considered the video evidence in deciding this case.  *Richmond*, 47 F.4th at 1179 (describing how we may consider video evidence in resolving disputes at summary judgment).

[7] In the video, the placement of Officer Britt's hands is unclear.  However, the video does show Officer Britt actively restraining two students with each hand, with A.G. showing no visible distress.

[8] Officer Bartlett and A.G. are out of the video frame when A.G. makes contact with the ground.

fight. Officer Britt explained to Officer Bartlett, who was still standing over A.G., that the students were stealing and not fighting. Officer Bartlett then helped A.G. off the ground, and A.G. walked away on his own.

Though A.G. had bruising on his knees, neck, and ribs, as well as some scrapes on his knees, he later told the school officials that he was "fine." And when his mother took him to his pediatrician, the doctor confirmed to A.G. and his mother that there was no injury to his ribs and prescribed a prescription strength Ibuprofen for any lingering pain. Despite being sore for several days, A.G. never filled the prescription or otherwise took any medication.

The school imposed a three-day suspension on A.G., and he was charged with theft by taking. He ultimately received a warning for the charge.

Glenn sued on behalf of A.G. on December 1, 2020, alleging that A.G. was entitled to damages on four counts: (1) a 42 U.S.C. § 1983 claim for unlawful seizure; (2) a § 1983 claim for excessive force; (3) a § 1983 claim for excessive corporal punishment; and (4) a state law battery claim in violation of O.C.G.A. § 51-1-13.[9]

---

[9] During the summary judgment briefing, Glenn conceded the federal claim of unlawful seizure and the state law claim for battery by affirmatively choosing not to argue them before the district court. *See Baxter v. Santiago-Miranda*, 121 F.4th 873, 884 (11th Cir. 2024) ("[I]f a plaintiff chooses not to amend his complaint" to drop a claim, "he may instead concede a claim in the

After an extended period of discovery, Officer Britt and Officer Bartlett moved for summary judgment. The district court granted the officers summary judgment because, the district court found, the undisputed facts, taken in the light most favorable to A.G., demonstrated that both Officer Britt and Officer Bartlett used only *de minimis* force in subduing A.G. The district court also found that the officers were entitled to qualified immunity because it was not clearly established that the officers' conduct constituted a Fourth Amendment violation nor should they have known, with "obvious clarity," that their conduct violated A.G.'s constitutional rights. After the district court entered judgment for the defendants and dismissed the case, Glenn timely appealed.

## II.     Standard of Review

"We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (quotation omitted). "A grant of summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quotation omitted).

"A fact is 'material' if it might affect the outcome of the suit under the governing law." *BBX Cap. v. FDIC*, 956 F.3d 1304, 1314 (11th Cir. 2020) (quotation omitted). "A dispute over such a fact is

---

district court" by failing to address it in his "initial response to [a] summary judgment motion.").

23-11890                Opinion of the Court                          7

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quotation omitted). "Although we must view the facts in favor of the nonmoving party, we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter." *Richmond*, 47 F.4th at 1179; *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("The Court of Appeals . . . should have viewed the facts in the light depicted by the videotape" when the videotape contradicted the plaintiff's allegations).

### III.    Discussion

Glenn argues that the district court erred in granting summary judgment to Officers Britt and Bartlett on her excessive force claim. She contends that the officers used excessive force in violation of the Fourth Amendment when they subdued A.G. because he was not actively involved in a fight at the time of the incident and the officers' response to him as an unresisting minor was unconstitutional.[10] The officers argue that they are protected by qualified immunity and that no reasonable jury could find they violated A.G.'s clearly established constitutional rights. We affirm the district court's grant of summary judgment to Officers Britt and Bartlett because the officers are entitled to qualified immunity.

---

[10] Glenn does not address the corporal punishment claim on appeal and, therefore, has waived it. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

Any force used by the officers was *de minimis* and, thus, A.G.'s constitutional rights were not violated.

We begin by laying out the standard for a grant of qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For qualified immunity to apply, a government official must initially establish that he was acting within his discretionary authority when the alleged wrongful acts occurred. *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc). "Once it has been determined that an official was acting with the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Id.* That burden requires the plaintiff to establish two elements. "First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right." *Id.* "Second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct." *Id.*

Here, Glenn does not dispute that Officers Britt and Bartlett were acting within their discretionary authority at the time of the alleged wrongful acts. Accordingly, in order to succeed in her claim that qualified immunity should not apply to the excessive force claim, Glenn must show both that (1) the officers used

unconstitutionally excessive force against A.G. and (2) the Fourth Amendment right violated was clearly established at the time. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Because we find for the officers on the first prong, we need not address the second.

### A. *The use of* de minimis *force cannot sustain an excessive force claim*

The Fourth Amendment provides a "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. This right "encompasses the plain right to be free from the use of excessive force." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Excessive force claims are judged under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). "That standard requires us to ask 'whether the officer's conduct was objectively reasonable in light of the facts confronting the officer.'" *Patel v. City of Madison*, 959 F.3d 1330, 1338–39 (11th Cir. 2020) (alterations adopted) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). Accordingly, we must "examine the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Baker v. City of Madison*, 67 F.4th 1268, 1279 (11th Cir. 2023) (alterations adopted) (quoting *Graham*, 490 U.S. at 396). We also must consider "the need for the application of force, . . . the relationship between the need and the amount of

force used, and . . . the extent of the injury inflicted." *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015). The Fourth Amendment does not protect against the use of reasonably necessary force by law enforcement. *Id.*

Even where force is not strictly necessary, it may still be lawful because it is reasonably necessary under the circumstances. *See id.* Accordingly, we have "declined to entertain claims of excessive force predicated upon the use of *de minimus* [sic] force by law enforcement." *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011).[11] We have defined *de minimis* force as "an amount of force insufficient as a matter of law to support an excessive force claim even under [the plaintiff's] version of the events." *See Nolin*, 207 F.3d at 1255.

Our cases authorize the use of *de minimis* force because law enforcement officers may detain suspects and bystanders to protect themselves or others from harm or to gain control of an incident. *See Croom*, 645 F.3d at 1253 (noting that the Supreme Court has determined that harm to all individuals "is minimized 'if the officers routinely exercise unquestioned command of the

---

[11] We have continued applying a *de minimis* force test, even after the Supreme Court's decision in *Graham*, 490 U.S. at 395–96, which established that claims of excessive force are evaluated under an "objective reasonableness" test. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."). *But see Croom*, 645 F.3d at 1252 ("[T]he *de minimus*-force [sic] exception preserved by *Nolin* in the wake of *Graham* may not sweep as broadly as it once did.").

situation'" (quoting *Michigan v. Summers*, 452 U.S. 692, 703 (1981))). Our cases provide guidance on the parameters of *de minimis* force. *De minimis* force does not mean insignificant force.  *See Nolin*, 207 F.3d at 1258; *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997).  In *Nolin*, we held that an officer used only *de minimis* force when he grabbed the plaintiff by the shoulder and wrist, threw him against a van, kneed him in the back, pushed his head into the side of the van, uncomfortably searched his groin, and handcuffed him. 207 F.3d at 1255.  We reasoned that the officer's actions, which were in response to the plaintiff's roughhousing with a friend and resulted in some bruising, constituted a "minimal amount of force and injury," particularly when the officer believed that he was responding to a fight.  *Id.* at 1254–55, 1258.  In *Jones*, we similarly found that an officer had used *de minimis* force when he pushed the plaintiff against the wall, kicked his legs apart, required him to raise his arms above his head, and took his wallet from his pants because "the actual force used and the injury inflicted were both minor in nature."  121 F.3d at 1460.

And we have found that the plaintiff's weakened physical condition relative to the officer also does not turn *de minimis* force into excessive force.  *Id.*  The fact that the *Jones* plaintiff had formerly suffered a stroke, thereby making the restraint more painful, did not transform *de minimis* force into excessive force.  *Id.*

If a plaintiff suffers only minor injuries, that fact also corroborates a finding of *de minimis* force.  *See Nolin*, 207 F.3d at 1255 (describing how extensive bruising "disappeared quickly"

with no medical treatment). *But see Lee*, 284 F.3d at 1200 ("[O]bjectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm."). In prior cases, we have noted that "[t]he nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1325, 1326 (11th Cir. 2017) (denying qualified immunity because a plaintiff had sustained substantial injuries, including "multilevel-disc herniations, resultant foraminal stenosis, a left-shoulder, rotator-cuff tear involving the infraspinatus tendon, and sprain of the right wrist, all caused by the assault"). The use of a "minimal amount of force and injury," particularly if the plaintiff heals quickly, indicates the use of *de minimis* force. *See Nolin*, 207 F.3d at 1255, 1258.

Finally, grabbing and choking a plaintiff—even in cases in which the victim has stopped resisting—can constitute *de minimis* force. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559–60 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994); *see also Croom*, 645 F.3d at 1252–53. In *Post*, we held that an officer did not use excessive force while arresting a plaintiff when he spun the plaintiff around, pushed him against a display case, and applied a choke hold because he reasonably believed the plaintiff was resisting arrest. 7 F.3d at 1556, 1559–60. Similarly, in *Croom*, we found that forcing an elderly woman to the ground with a knee to the back was not excessive force, even though she "was wearing only a one-piece bathing suit and was known by the officers to be infirm," because the officers

were entitled to "exercise unquestioned command of the situation." 645 F.3d at 1251–53. The officers were entitled to this level of deference because the plaintiff "was in the front yard of a house known by law enforcement to be involved in the distribution of controlled substances at the time it was searched pursuant to a warrant," and the officers were reasonable in their belief that their safety was endangered. *Id.* at 1253. Accordingly, even though the officers restrained her in this uncomfortable physical condition for around ten minutes, they employed only *de minimis* force. *Id.* at 1252–53.

> B. *The officers employed only* de minimis *force in restraining A.G.*

Glenn contends that the totality of the circumstances in this case did not justify the degree of force used against A.G. because his crime was minor, and he did not resist. The officers respond that they used only *de minimis* force in restraining A.G. because they believed that they were responding to a fight and were entitled to use some force to arrest A.G. We evaluate each officer separately.

> i. *Officer Britt used* de minimis *force in restraining A.G.*

Glenn argues that the district court erred in granting Officer Britt summary judgment on her excessive force claim because Officer Britt restrained, choked, and pushed A.G. up against the

14                    Opinion of the Court                    23-11890

vending machine even though A.G. was not resisting at the time. We disagree.

We find that the facts alleged, and the testimonial and video evidence presented, indicate that Officer Britt used only *de minimis* force not rising to the level of "excessive force" under the Fourth Amendment in restraining A.G. by briefly holding him by the neck. As an initial matter, we note that A.G.'s concession in his deposition that he could, in fact, breathe contradicts the allegation in the complaint that Officer Britt choked A.G.[12]

---

[12] We note that to choke is "[t]o suffocate" or "to throttle, strangle; to produce a sensation of strangling." *Choke*, *Oxford English Dictionary*, https://doi.org/10.1093/OED/8532354164 (May 29, 2025).

In his deposition, when asked about whether he could breathe or was being choked, A.G. responded:

Q.    Okay. And how long was he pushing on the with his thumb on the right side of your neck?
A.    I don't remember exactly how long it was because shortly after another officer came --
Q.    Okay.
A.    -- and choked me and slammed me.
Q.    He choked you too?
A.    Yes, ma'am.
Q.    Okay. You said Officer Britt choked you. Could you breathe?
A.    No, ma'am.
Q.    Okay.
A.    Barely.
Q.    Barely?
A.    I could, I could breathe, but it all happened so fast, I really couldn't process it all.

23-11890                Opinion of the Court                15

But even if Officer Britt choked A.G. for a couple of seconds at a time when A.G. was not obviously resisting, the force used is similar to the *de minimis* force used in *Post* and *Croom* because Officer Britt reasonably believed he was responding to a fight and he only briefly restrained A.G.[13] *Post*, 7 F.3d at 1559–60. And here, Officer Britt's contact with A.G. lasted at most two seconds. While the contact in *Croom* was of a different kind, there we still held that restraining an elderly and frail woman for up to ten minutes was *de minimis*. 645 F.3d at 1252–53. Officer Britt also only caused some minor bruising on A.G.'s neck that cleared up in a few days, which is exactly the type of minor injury that we held to be evidence of *de minimis* force in *Nolin*. *Nolin*, 207 F.3d at 1255, 1258. Thus, Officer Britt used *de minimis* force in restraining A.G.

Glenn resists our conclusion by repeatedly asserting that the difference in age between the officer and 14-year-old A.G. should tilt this analysis toward her. But at least one of our sister circuits has recognized that "[a]n arrestee's age . . . do[es] not necessarily undermine an officer's concern for safety and need to control the situation." *J.H. ex rel. J.P. v. Bernalillo Cnty.*, 806 F.3d 1255, 1259 (10th Cir. 2015) (alterations in original) (quotation omitted); *see also E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 180 (4th Cir. 2018) (suggesting that "the typical arrest of . . . a teenager" is more like "the typical arrest of an adult" than an arrest of a child). And we have specifically held that *de minimis* force is not converted into excessive

---

[13] Glenn conceded below that she did not dispute the officers' belief that the students were fighting and in danger of being harmed.

force simply because an officer is bigger and stronger than a plaintiff. *Jones*, 121 F.3d at 1460.[14]

Accordingly, we find that Officer Britt used only *de minimis* force in restraining A.G. and we affirm the district court's grant of summary judgment.

> ii.  *Officer Bartlett used* de minimis *force in restraining A.G.*

The plaintiff argues that the district court improperly granted summary judgment to Officer Bartlett because Officer Bartlett used excessive force when he picked up A.G. and threw him to the floor. We disagree because Officer Bartlett used reasonable force in response to his reasonable belief that A.G. was fighting.

First, the video evidence shows that Officer Bartlett, in his encounter with A.G., used considerably less force than what we have described as *de minimis* in other cases. In the video, Officer Bartlett picked up A.G. at the waist, carried him a few paces, threw him to the ground, hitting his head against a wall, and briefly dragged him across the floor.[15] The force used by Officer Bartlett

---

[14] In *Richmond*, only after we determined that the defendant had used excessive force in restraining the plaintiff did we mention the plaintiff's age and size; the plaintiff's age and size played no role in that conclusion. *See Richmond*, 47 F.4th 1183–86

[15] Glenn describes the takedown maneuver as a "body-slam[]." Officer Bartlett disputes the classification of the maneuver used to bring A.G. to the ground

was less than the force that we found to be *de minimis* in *Nolin*. 207 F.3d at 1255 (describing how the officer grabbed the plaintiff, threw him headfirst against a van, and uncomfortably restrained and handcuffed him). Indeed, the force used by Officer Bartlett is similar to the level of force used in *Jones*, which we also held was *de minimis*. 121 F.3d at 1460 (officer pushed infirm plaintiff against the wall, kicked his legs, and restrained his arms above his head).

A.G. likewise experienced only minor injuries, which further indicates that Bartlett used only *de minimis* force. A.G. was able to walk away from the incident on his own and expressed that he was "fine." A.G. did have bruising on his knees, neck, and external rib cage, and he allegedly hit his head against the brick wall as he was thrown, but Glenn does not dispute that A.G. did not suffer a head injury and did not even fill the Ibuprofen prescription he received. At most, A.G. was sore for several days. Our cases generally consider bruising lasting only a few days to be an indicator of *de minimis* force. *Compare Nolin*, 207 F.3d at 1255, 1258 (finding minor bruising and *de minimis* force), *with Stephens*, 852 F.3d at 1326 (finding major injury and excessive force).

Finally, Officer Bartlett's encounter with A.G. was short. The video shows that immediately after A.G. hit the ground, A.G. was able to get to his knees because Officer Bartlett was not holding him down. And seconds after the confrontation began, Officer Bartlett helped A.G. to his feet. In analyzing the claim against

---

as a "takedown" or a "body-slam." The disputed classification does not affect our analysis of whether Officer Bartlett used *de minimis* force.

Officer Britt, we have already described how in *Croom*, officers used *de minimis* force in restraining an elderly and frail woman on the ground with a knee in her back for up to ten minutes based on a reasonable belief that their safety was in danger. 645 F.3d at 1251–53. Here, Officer Bartlett restrained A.G. for a handful of seconds, which is far less time than that held to be *de minimis* in *Croom*, in response to his reasonable belief that A.G. was involved in a violent altercation that could harm him or others. Thus, Officer Bartlett used only *de minimis* force in using a takedown maneuver to briefly restrain A.G.

Glenn resists our conclusion again, insisting instead that this case is most similar to our decision in *Richmond*, wherein we held that a school resource officer used excessive force in restraining a middle schooler. 47 F.4th at 1178. But *Richmond* supports our ruling in this case. In *Richmond*, the altercation began after a school employee told a defendant school resource officer that the plaintiff student had pushed his mother. *Id.* The officer cursed at the student and mocked him for about two minutes. *Id.* Because the student did not look at the officer during his tirade and only stood silently looking down, the officer grabbed the student's face to make him look up. *Id.* The student pushed the officer's arm away, and the officer responded by shoving the plaintiff and using an armbar technique to lift the plaintiff off his feet and flip him onto the ground. *Id.* We held that the defendant had used excessive force for three reasons: (1) he had no legitimate law enforcement justification for initiating the use of force; (2) the defendant had no

reason to believe the plaintiff posed a threat to his safety or that of others; and (3) the plaintiff gave no signs of resistance. *Id.* at 1183.

In this case, unlike in *Richmond*, Officer Bartlett had a legitimate law enforcement purpose in his initial contact with A.G because he had reason to suspect that a fight was ongoing, he saw A.G. at the vending machine being held by Coach Edgar, and he did not learn that A.G. was instead stealing from the machine until after the contact had occurred. *See Nolin*, 207 F.3d at 1254–55, 1258 n.4. Second, unlike the officer in *Richmond*, Officer Bartlett believed that the situation posed a threat, and Glenn has conceded that the belief that the situation was a fight was reasonable. *See Richmond*, 47 F.4th at 1183 (force justified if "suspect . . . pose[s] a threat"). Finally, while A.G. might not have been resisting the officers when he was similarly restrained by Officer Bartlett, the encounter occurred under very different circumstances than those in *Richmond*. Here, the split-second nature of the initial contact between Officer Bartlett and A.G., coupled with Officer Bartlett's reasonable belief that he thought he was breaking up a fight, justified the use of force in separating the students and restraining A.G. *Id.* Thus, in contrast to *Richmond*, Officer Bartlett's use of force was *de minimis*.

For these reasons, we find that Officer Bartlett did not use excessive force in violation of the Fourth Amendment and affirm the district court's grant of summary judgment to Officer Bartlett. *See Nolin*, 207 F.3d at 1257.

## IV. Conclusion

Accordingly, for the reasons stated above, we affirm the district court's grant of summary judgment in favor of the defendants, Officers Britt and Bartlett.

**AFFIRMED.**